Marion DIXON, et al.

v.

FORD MOTOR CREDIT CO., et al.

Nos. CIV. A. 98–2456, CIV. A. 99–1819.

United States District Court, E.D. Louisiana.

Sept. 11, 2000.

James Frederick Willeford, New Orleans, LA, for Michelle James Orso, Leroy Perry, Kevin Duthu, plaintiffs.

Peter A. Feringa, Jr., Betty Finley Mullin, Scott Cameron Barney, Chaffe, McCall, Phillips, Toler & Sarpy, LLP, New Orleans, LA, for Ford Motor Credit Co.

Stephen Winthrop Rider, Anthony J. Rollo, Jr., David S. Willenzik, Lauren Zimmerman Garvey, McGlinchey Stafford, PLLC, New Orleans, LA, for Nissan Motor Acceptance Corp., Crescent Bank & Trust Co.

H. Alston Johnson, Richard E. Matheny, Jane H. Barney, Phelps, Dunbar, LLP, Baton Rouge, LA, Hansel Mark Harlan, Phelps Dunbar, LLP, New Orleans, LA, for First Assurance Life of America.

Hansel Mark Harlan, Phelps Dunbar, LLP, New Orleans, LA, Scott D. Daniel, Greer, Herz & Adams, Galveston, TX, Charles R. Penot, Jr., Stephen Winthrop Rider, Anthony J. Rollo, Jr., David S. Willenzik, Lauren Zimmerman Garvey, McGlinchey Stafford, PLLC, New Orleans, LA, for American National Insurance Company.

### ORDER DISMISSING CASE

BARBIER, District Judge.

On July 21, 2000, this Court entered an order directing the parties to brief the question whether subject matter jurisdiction existed for plaintiffs' suit. Subsequently, the parties timely filed briefs directed to this issue. The Court's directive was motivated by counsel for plaintiffs' concession, during oral argument held on another motion on July 19, 2000, that the federal RICO statute provides the sole basis for federal subject matter jurisdiction, coupled with defendants' assertions that plaintiff had failed entirely to state a claim under RICO. Cognizant of the fact that courts have a continuing duty to in-

quire into their own subject matter jurisdiction,[1] the Court determined that it would be prudent to resolve the question before additional and possibly unnecessary proceedings take place.

The lengthy procedural background and surrounding facts have been set forth in detail in prior orders of the Court, so they will not be restated here. For present purposes, it is sufficient to know that plaintiffs have in fact conceded that federal subject matter jurisdiction is hinged on RICO, and plaintiffs' RICO claims are brought pursuant to 18 U.S.C. § 1962(c) & (d).[2]

## I. *Section 1962(c) Claims*

Title 18 § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

To succeed in a claim under this provision, a plaintiff must demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Conducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, nor is mere commission of the predicate offenses." *Sedima,*

*S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). To show a pattern of racketeering activity, a plaintiff must show at least two predicate racketeering acts that are related and that either amount to, or threaten the likelihood of, continued criminal activity. *H.J. v. Northwestern Bell,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Mail fraud in violation of 18 U.S.C. § 1341 qualifies as a predicate act for a RICO claim. 18 U.S.C. § 1961.

### A. *RICO Allegations of the 4th Amended Complaint*

In the instant case, plaintiffs have made the following allegations against the defendants in support of their § 1962(c) claims:

With respect to defendant Ford Motor Credit Company ("Ford"), plaintiff alleges that Ford, a RICO person, participates directly or indirectly in the conduct of the separate enterprise, LaMarque Ford, Inc. ("LaMarque"), through a pattern of racketeering activity. The predicate acts which form the pattern of racketeering activity alleged are wire and mail fraud, comprised of the collecting of credit information and the mailing of documents[3] between Ford and LaMarque in furtherance of the alleged conspiracy to defraud plaintiffs by inducing them to buy unnecessary credit life insurance. 4th Am. Complaint, ¶¶ 15–18.

With respect to defendant Chrysler Financial Corporation ("CFC"), plaintiff al-

---

**1.** See *Fax Telecommunicaciones, Inc. v. AT & T,* 138 F.3d 479, 485 (2d Cir.1998); Fed. R.Civ.P. 12(h)(3).

**2.** Following the Court's December 30, 1999 finding that diversity jurisdiction was not present in this case (Rec.Doc. 72), plaintiff filed a 3rd Amended Complaint alleging causes of action under RICO on March 12, 1999. Rec. Doc. 103. Following this Court's April 21, 1999 dismissal of a similar case brought by plaintiffs' counsel, *Perrin v. First Money, LLC,* 98–1736, based on the Court's

finding that the *Perrin* plaintiffs had failed to state a claim under 18 U.S.C. § 1962(a)—(d), plaintiffs filed their 4th Amended Complaint in the instant action foregoing claims under § 1962(a) & (b) and containing expanded allegations under § 1962(c), and under § 1962(d).

**3.** The documents mailed between the various parties named in plaintiffs' complaints consisted of certificates of insurance, policy numbers, payments, delinquency notices, credit life applications, monthly reports, etc.

leges that CFC, a RICO person, participates directly or indirectly in the conduct of the separate enterprise, Ray Brandt Dodge, Inc. and Julian Graham Dodge Inc. (collectively, "Dodge dealers"), through a pattern of racketeering activity. The predicate acts which form the pattern of racketeering activity alleged are wire and mail fraud, comprised of the collecting of credit information and the mailing of documents between CFC and the Dodge dealers in furtherance of the alleged conspiracy to defraud plaintiffs by inducing them to buy unnecessary credit life insurance. 4th Am. Complaint, ¶¶ 19–23.

With respect to defendant Nissan Motor Acceptance Corporation ("NMAC"), plaintiff alleges that NMAC, a RICO person, participates directly or indirectly in the conduct of the separate enterprise, Ray Brandt Nissan, Inc. ("Ray Brandt"), through a pattern of racketeering activity. The predicate acts which form the pattern of racketeering activity alleged are wire and mail fraud, comprised of the collecting of credit information and the mailing of documents between NMAC and Ray Brandt in furtherance of the alleged conspiracy to defraud plaintiffs by inducing them to buy unnecessary credit life insurance. 4th Am. Complaint, ¶¶ 24–27.

With respect to defendants Louisiana Dealer Services Insurance, Inc. ("LDS") and First Assurance Life of America ("FALA"), plaintiff alleges LDS and FALA, RICO persons, participate directly or indirectly in the conduct of separate enterprises, the Dodge dealers and Ray Brandt, through a pattern of racketeering activity. The predicate acts which form the pattern of racketeering activity alleged are mail fraud, comprised of the mailing of documents between LDS and FALA and the Dodge dealers, Ray Brandt, and others in furtherance of the alleged conspiracy to defraud plaintiffs by inducing them to buy unnecessary credit life insurance. 4th Am. Complaint, ¶ 28.

With respect to defendant American National Insurance Company ("ANICO"), plaintiffs allege that ANICO, a RICO person, participates directly or indirectly in the conduct of the separate enterprise, LaMarque, through a pattern of racketeering activity. The predicate acts which form the pattern of racketeering activity alleged are mail fraud, comprised of the mailing of documents between ANICO and LaMarque in furtherance of the alleged conspiracy to defraud plaintiffs by inducing them to buy unnecessary credit life insurance. 4th Am. Complaint, ¶ 30.

In the consolidated *Wells* action, the *Wells* Complaint alleges that LDS and FALA, RICO persons, participate directly or indirectly in the conduct of the separate enterprise, Crescent City Nissan ("Crescent City"), through a pattern of racketeering activity. The predicate acts which form the pattern of racketeering activity alleged are wire and mail fraud, comprised of the collection of credit information and mailing of documents between LDS and FALA and Crescent City in furtherance of the alleged conspiracy to defraud plaintiffs by inducing them to buy unnecessary credit life insurance. *Wells* Complaint, ¶¶ 16–17.

Finally, in plaintiffs' RICO case statements filed in both the *Dixon* and *Wells* actions, plaintiffs allege that "without the use of the mails for monthly installment payments of retail installment contracts, plaintiffs would not incur damages. . . ." Rec. Docs. 151 & 156, ¶ 9.[4]

---

4. Because plaintiffs' RICO case statements refer only to mail fraud as a "but for" cause of their injuries, and because plaintiffs' Supplemental Brief Addressing Subject Matter Jurisdiction emphasizes only mail fraud, for convenience and economy, the Court limits its discussion here to predicate acts of mail fraud. However, the Court observes that its

## B. Arguments of the Parties

Defendants argue, *inter alia,* that while the foregoing allegations, even if true, assert that plaintiffs' damages were caused by the alleged predicate acts (mail fraud) of defendants, they do not state a claim under § 1962(c) because they neglect to allege that plaintiffs detrimentally relied on misrepresentations or omissions in the fraudulent mailings, and in fact, plaintiffs have admitted that they did not detrimentally rely on defendants' alleged mail fraud. In so arguing, defendants point the Court to the Fifth Circuit's recent decision in *Summit Properties, Inc. v. Hoechst Celanese Corp.,* 214 F.3d 556 (5th Cir.2000).

In contrast, while plaintiffs concede that they did not detrimentally rely on misrepresentations or omissions in defendants' mail fraud, they argue that

> *Summit* is inapposite to the instant action, because in *Summit* the plaintiffs alleged that their damages were the result of misrepresentations.... In this action, plaintiffs alleged that their damages are proximately caused by defendants' predicate acts, specifically, their use of the mails in connection with a scheme to defraud, without which the fraud would not occur.

Plaintiffs' Supplemental Brief Addressing Subject Matter Jurisdiction, 14.

Accordingly, the Court is called upon to examine the Fifth Circuit's decision in *Summit,* and whether and to what extent is applicable to the case at bar.

## C. The Summit Decision

In *Summit,* a products liability case, the owners of properties in which polybutylene ("PB") plumbing systems had been install-ed sued manufacturers of PB plumbing systems and their components under RICO, alleging fraud in the marketing of PB. Plaintiffs argued that the defendants conspired to defraud them by directing a massive marketing campaign designed to establish PB as a superior plumbing product, when in fact, PB possesses inherent defects which make it unsuitable for plumbing, including the fact that PB systems degrade, crack, leak, and spray water. 214 F.3d at 558. In making their case, the *Summit* plaintiffs conceded that they " 'did not rely on anything Defendants said or published in purchasing their properties.' " *Id.* at 559, quoting Plaintiffs' Memo. Instead, much like the plaintiffs here, they argued that "individual acts of reliance are simply unnecessary in order to recover for damages resulting from civil RICO fraud." *Id.* at 560. Also like plaintiffs herein, their arguments relied heavily on the (undisputedly correct) legal proposition that reliance is not necessary for violation of the federal mail fraud statute. *Armco Industrial Credit Corp. v. SLT Warehouse Co.,* 782 F.2d 475 (5th Cir. 1986).[5]

 RICO provides a private, civil cause of action to "[a]ny person injured in his business or property **by reason of** a violation of section 1962...." 18 U.S.C. § 1964(c) (emphasis added). As reiterated in *Summit,* the Supreme Court has previously held "that the 'by reason of' language in RICO requires a causal connection between the predicate mail or wire fraud and a plaintiff's injury that includes 'but for' and 'proximate' causation." *Summit,* 214 F.3d at 558, citing *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 265–68, 112 S.Ct. 1311, 117

findings herein are equally applicable to plaintiffs' allegations to the extent the predicate acts may be wire fraud.

5. The elements of mail fraud in violation of 18 U.S.C. § 1341 are (1) the existence of a

scheme to defraud; (2) the use of the mails to execute the scheme; and (3) the specific intent on the part of the defendant to commit fraud. *U.S. v. Brown,* 186 F.3d 661, 665 (5th Cir.1999).

L.Ed.2d 532 (1992). Accordingly, the Fifth Circuit acknowledged that while "the government can punish unsuccessful schemes to defraud because the underlying mail fraud violation does not require reliance," **a civil plaintiff** must show causation. *Id.* at 559 (emphasis supplied). In embracing this reasoning, the Fifth Circuit rejected the *Summit* plaintiffs' attempt to reduce the question to whether the elements of mail fraud were present, and instead framed the issue before it as whether a plaintiff must show reliance in order to establish the proximate cause necessary to state a RICO claim, when the predicate acts alleged are mail fraud or wire fraud.

 In conducting its analysis, the Fifth Circuit took cognizance of its prior decision in *Armco.* In *Armco,* the court upheld a district court's refusal to charge a jury that reliance was necessary to show proximate cause in a RICO case predicated on mail fraud. The *Summit* court pointed out, however, that *Armco* did not squarely address whether proximate cause was required for a RICO claim, and to the extent it may have suggested that it was not, it was overruled by the Supreme Court's subsequent opinion in *Holmes v. Securities Investor Protection Corp.,* which established the proximate cause requirement in RICO cases. 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). Thus, in addressing the question presented in *Summit*—whether reliance is necessary for proximate cause—the Fifth Circuit was not constrained in any way by the prior holding in *Armco* or the fact that reliance is not an element of mail fraud under 18 U.S.C. § 1341.

The *Summit* court, following the example of other circuits,[6] answered the question in the affirmative. In so holding, it relied upon the directive in *Holmes* that "federal courts [should] employ traditional notions of proximate cause when assessing the nexus between a plaintiff's injuries and the underlying RICO violation." 214 F.3d at 560, citing *Holmes,* 503 U.S. at 268, 112 S.Ct. 1311.

The court's stated rationale for its conclusion was the causal link, in a fraud claim, between a defendant's fraud and a plaintiff's injuries. *Id.* As the court noted, "the causal connection between a misrepresentation and a subsequent harm ... vanishes once the product travels beyond the entity who actually relied on the representation when making the decision." *Id.* While this particular formulation reached in *Summit* was made in the context of a products liability claim, the reasoning informing it is no less applicable here. The mere fact that defendants mailed documents incidental to their business, legitimate or illegitimate, does not answer the question of whether the fraud was the proximate cause of plaintiff's injuries. The Court acknowledges that sorting out RICO liability can be confusing, since RICO codifies a Congressional intent to provide a private civil cause of action for criminal activity. However, the fact remains that mail fraud schemes (and for that matter, all manner of crimes) can be occurring around us every day, and while their mere existence provides the Government a right to prosecute the perpetrators, it does not provide a private civil cause of action for an individual plaintiff until the fraud has

---

6. In particular, the court pointed to *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,* 90 F.3d 737, 746–47 (3d Cir.1996); *Chisolm v. TranSouth Fin. Corp.,* 95 F.3d 331, 337 (4th Cir. 1996); *Appletree Square I v. W.R. Grace & Co.,* 29 F.3d 1283, 1286 (8th Cir.1994); *Central Distribs. of Beer, Inc. v. Conn,* 5 F.3d 181, 184

(6th Cir.1993); *Pelletier v. Zweifel,* 921 F.2d 1465, 1499–500 (11th Cir.1991); *County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1311 (2d Cir.1990); and *Reynolds v. East Dyer Dev. Co.,* 882 F.2d 1249, 1253 (7th Cir.1989).

actually injured him or her. For this reason, reliance is necessary to establish proximate cause in a civil RICO action predicated upon mail fraud.

### D. *Application to the Present Case*

■ In the case at bar, plaintiffs concede that they did not rely on any representations or omissions[7] made as part of defendants' alleged mail fraud. In fact, the representative plaintiffs have testified in depositions that they did not rely on any representations or omissions of the defendants in deciding to purchase credit life insurance, and that they would not necessarily have foregone purchasing the credit life insurance had they known the details which they allege were not, but should have been disclosed. For instance, when asked "What do you believe would have changed your mind, if anything, about whether to buy credit life insurance the day you bought the car if you had been told it?", plaintiff Kevin Duthu candidly admitted "I don't know whether or not I would have had a change of decision."[8] Similarly, plaintiff Michelle Orso responded to the query: "So you are not saying that if you had been told that you were buying it, that you wouldn't have bought it?" by saying "No, that is not what I'm saying."[9] She also admitted that she didn't know whether she would have

changed her mind had she known the percentage of the commission, and that the issue of the agent's commission was not a factor in her decision to purchase the insurance.[10] Wells testified that "he did not read the Retail Install Contract before he signed it, even though the salesperson suggested that he read it, and that had he read the portion discussing the insurance policies (which he acknowledged was written in "plain English"), he would not have purchased the insurance."[11] He also candidly acknowledged that "[i]f I would of [sic] read it, I would not be here [involved in this lawsuit]."[12] Thus, not only have plaintiffs failed to establish that defendants' predicate racketeering activity (i.e., the alleged mail fraud) proximately caused their alleged injuries by inducing them to buy the insurance, it is unclear whether any representations or omissions of the defendants made to them were a factor in deciding to purchase the insurance.

The Court is aware that notwithstanding the plaintiffs' concession that they did not rely on defendants' alleged mail fraud, they have stated, in a conclusory fashion, that the defendants' alleged racketeering activity was a "but for" cause of their injuries,[13] and that but for plaintiffs' use of the mails to send payments, the sale of the credit life insurance would not have occurred.[14] This argument is flawed be-

---

7. Plaintiffs' counsel, in some pleadings, has attempted to distinguish the instant case, in which plaintiffs allege material omissions were made, from cases involving alleged misrepresentations (as happened in *Summit*), and seems to suggest that "reliance" does not come into play in omissions cases. This court has previously rejected this argument by plaintiff in an earlier dismissed precursor suit to the instant suit. See *Young v. Ray Brandt Dodge, Inc.*, 176 F.R.D. 230 (E.D.La.1997). Reliance in an omissions case is demonstrated when a claimant establishes that had it known of the alleged undisclosed facts, he or she would have taken a different course of action.

8. Duthu Depo., 88–89.

9. Orso Depo., 77–78.

10. *Id.* at 79–80.

11. Wells Depo., 150–52.

12. *Id.* at 150.

13. See 4th Am. Complaint, ¶¶ 16, 20, 25, 29, & 31; Wells Complaint, ¶ 21.

14. RICO Case Statements, Rec. Docs. 151 & 156, ¶ 9.

cause, since plaintiffs have conceded that they did not rely on the alleged mailings,[15] there is no way to know if they would have purchased the insurance absent the mailings or not, and the Court cannot fathom how the mailing of routine business forms and the like would influence plaintiffs' decision to purchase credit life insurance. As for the mailing of payments, this is not a *sine qua non* of the fraud alleged by plaintiffs—while it would certainly be burdensome, plaintiffs could have paid their bills in person or through a "drop box", and in fact, many bills are paid that way. Most important however, even if plaintiffs' "but for" arguments were true, that would not be enough to impose liability on defendants, because "a cause-in-fact connection, standing alone, does not suffice to establish [RICO] liability." *Zervas v. Faulkner*, 861 F.2d 823, 834 (5th Cir.1988) (citations omitted); *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 1317–18, 117 L.Ed.2d 532 (1992).

In sum, under *Holmes* and *Zervas*, a plaintiff must show proximate cause to recover under RICO on a claim predicated on mail fraud. To show proximate cause in such a case, plaintiffs must demonstrate reliance on defendants' mail fraud. *Summit*, 214 F.3d at 562. Plaintiffs herein have conceded they did not rely on defendants' mail fraud, and in fact, did not rely on any representations or omissions made by defendants in purchasing credit life insurance. Accordingly, plaintiffs cannot state a claim under 18 U.S.C. § 1962(c).

## II. *Section 1962(d) Claims*

Subsection 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of [section 1962]." 18 U.S.C. § 1962(d).

Thus, in the absence of valid claims under subsections (a), (b), and (c), a claim under subsection (d) must also fail. *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir.1993). The Fourth Amended Complaint does not contain any allegations pursuant to subsection (a) or (b), and as the foregoing analysis bears out, plaintiffs cannot state a claim under subsection (c); accordingly, plaintiffs' claims under subsection (d) must also be dismissed. Therefore, lacking a viable claim under any provision of RICO, plaintiffs' Fourth Amending Complaint does not present a federal question that would confer original subject matter jurisdiction over this action.

## III. *Supplemental Jurisdiction*

Plaintiffs also argue that the Court may exercise its supplemental jurisdiction over their claims, pursuant to 28 U.S.C. § 1367. Title 28 U.S.C., section 1367 provides in pertinent part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution....

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-

(1) the claim raises a novel or complex issue of State law;

(2) the claim substantially predominates over the claim or claims over

---

**15.** In fact, it is highly unlikely that plaintiffs even knew of the occurrence or content of

defendants' routine business mailings.

which the district court has original jurisdiction;

(3) the district court has dismissed all claims over which it has original jurisdiction; or

(4) in exceptional circumstances there are other compelling reasons for declining jurisdiction.

■ When the facts of an individual case indicate that extensive pretrial preparation has been conducted in federal court which would have limited utility in state court, a federal district court may abuse its discretion in dismissing or remanding the case on the eve of trial. See *Newport Ltd. v. Sears, Roebuck and Co.*, 941 F.2d 302 (5th Cir.1991). However, the "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir.1992). The "justification for pendent jurisdiction lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." *Guzzino v. Felterman*, 191 F.3d 588, 594. (5th Cir.1999) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

■ In the instant case, all federal claims have been dismissed, and pre-trial preparation has largely been limited to addressing the jurisdiction issue. In fact, the issue of class certification has not been addressed and no trial dates or other deadlines have been established. Thus, in the absence of any valid federal claims and any justification stemming from judicial economy concerns or issues of convenience or fairness to litigants, which might be present if this litigation were more advanced, the Court finds that it should not needlessly make decisions concerning state law, and pursuant to 28 U.S.C. § 1367(c)(3), it declines to exercise supplemental jurisdiction.

### IV. *Conclusion*

Plaintiffs' sole basis for federal question jurisdiction is premised upon their RICO claims. However, as the foregoing analysis demonstrates, "it appears beyond doubt that plaintiff[s] can prove no set of facts in support of [their] claims that would entitle them to relief" under RICO, and thus the RICO claims must be dismissed. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Further, the Court has declined to exercise its supplemental jurisdiction over plaintiffs' pendent state law claims. Therefore, this action must be dismissed.

The Court is aware that plaintiffs' counsel contends that because the law of the case applies to decisions of subject matter jurisdiction, this Court should not revisit the earlier decision of Judge Mitchell finding that subject matter jurisdiction was present and that the action should not be dismissed. However, Judge Mitchell's opinion was rendered on May 31, 2000, shortly before the Fifth Circuit decision in *Summit* (rendered June 7, 2000), and no arguments regarding the reliance requirement to establish proximate cause in RICO claims predicated on mail fraud were considered by him in making his ruling. Thus, there is no pre-existing law of the case on this point.

Accordingly;

**IT IS ORDERED** that plaintiffs' claims in these consolidated cases brought pursuant to 18 U.S.C. § 1962(c) & (d) should be and are hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that plaintiffs' pendent state law claims in these consolidated cases should be and are here-

by **DISMISSED** **without** **prejudice** for lack of subject matter jurisdiction.