United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 23, 2005**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

Cause No. 04-31120
Summary Calendar

_____


MARYLENA BROWN,
on behalf of herself and others similarly situated,

Plaintiff-Appellant.

versus

PROTECTIVE LIFE INSURANCE COMPANY,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
Civil Action No. 04-1132-S

---

Before JONES, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:[*]

This is an appeal from the district court's grant of
Protective Life Insurance Company's ("Protective") motion to
dismiss for failure to state a claim. For the reasons stated
below, we AFFIRM.

In 1996, Marylena Brown and her now-deceased husband
bought a vehicle from Banner of New Orleans Inc. ("Banner"). To
finance the purchase, the Browns entered into a retail installment
contract ("RIC") and purchased credit life insurance underwritten

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

by Protective.  The Browns financed their vehicle purchase using a pre-computed loan[1] in the amount of $23,612.58, $1,876.70 of which was paid to Protective for credit life insurance.[2]  Soon thereafter, Banner assigned the RIC to Crescent Bank & Trust ("Crescent Bank"), to which the Browns agreed.  R. 310.  Upon the death of Brown's husband, Protective paid the outstanding loan amount to Crescent Bank.  Pursuant to a related suit, Brown later received excess benefits for coverage of unearned interest.

The instant suit is the fourth attempt of Brown's counsel to allege claims under the Louisiana Motor Vehicle Sales Finance Act ("LMVSFA"), La. R.S. 6:951, et seq., against Protective.[3]  The gravamen of Brown's complaint is that Protective sold her (and her deceased husband) excessive credit life insurance in relation to her purchase and financing of a vehicle in 1996.  She contends that the amount of coverage exceeded the finance amount and included

---

[1]     "A precomputed consumer credit transaction means a consumer credit transaction under which loan finance charges or credit service charges are computed in advance over the entire scheduled term of the transaction and capitalized into the face amount of the debtor's promissory note or other evidence of indebtedness."  LA. R.S. 9:3516(25).

[2]     Under the credit life insurance policy, Protective agreed to pay off all outstanding amounts due under the RIC to the beneficiary upon the death of the insured.

[3]     See Young v. Ray Brandt Dodge, Inc., 176 F.R.D. 230 (E.D. La. 1997) (denying counsel's attempt to certify a class action against motor vehicle dealers and credit insurers, including Protective for violation of the LMVSFA and RICO); Young v. Ray Brandt Dodge, Inc., No. 96-1560 (E.D. La. Dec. 18, 1997) (same); Dixon v. Ford Motor Credit Co., 137 F. Supp. 2d 702 (E.D. La. 2000) (dismissing RICO claims with prejudice and dismissing LMVSFA claims without prejudice for want of jurisdiction), aff'd, 252 F.3d 1356 (5th Cir.), cert. denied, 122 S. Ct. 349 (2001); Brown v. Protective Life, et al., 02-0018 (E.D. La. Nov. 22, 2002), aff'd, 353 F.3d 405 (5th Cir. 2003) (same).

2

coverage for unearned interest for the term of the RIC in violation of the LMVSFA.

Granting Protective's motion to dismiss for failure to state a claim, the district court found that the LMVSFA, which pertains to the sale and financing of motor vehicles, does not provide a cause of action against insurance companies. The district court also dismissed Brown's state law tort claims for tortious conduct and fraud under LA. REV. STAT. 22:1220, as well as her contract claims under LA. REV. STAT. 22:658. The district court did not expressly dismiss Brown's unjust enrichment claim in its written Order and Reasons, but entered judgment dismissing Brown's case in its entirety. Brown's appeal concerns only the LMVSFA claims and her unjust enrichment claim.

This court reviews a district court's grant of a Rule 12(b)(6) motion to dismiss de novo, applying the same standards as that court. Cornish v. Correctional Serv. Corp., 402 F.3d 545, 548-49 (5th Cir. 2005).

First we hold that, directed solely to the sale and financing of motor vehicles and defining the legal relationship of the "Retail Buyer" and "Retail Seller," the LMVSFA does not provide a cause of action against insurance companies like Protective. Textually, Protective does not come within any of the financier/seller-related definitions under a plain reading of the

LMVSFA.[4]  Under the LMVSFA, a "Retail Seller or Seller" is defined as:

> a person who <u>sells</u> a motor vehicle to a retail buyer or a person <u>who lends money</u> to a retail buyer subject to a retail installment contract.

L<small>A</small>. R.S. 6:951(3) (emphasis added).  Protective did not "sell" a vehicle to the Browns; Banner was the dealer-seller.  Nor did Protective "lend[] money" to the Browns for the purchase of the vehicle.  As explicitly stated in the RIC:

> **Dealer/Creditor:** <u>Banner</u> of N.O. Inc.
> <u>I have entered into a credit sale with you to finance</u> the purchase of the following motor vehicle.

R. 310 (emphasis added).  Under the LMVSFA, as mirrored by the terms of the contract, Brown entered into the credit sale agreement to finance the vehicle purchase with Banner, making Banner (and later Crescent Bank) Brown's exclusive lender and creditor.

That Protective paid the policy proceeds directly to Crescent Bank does not change the explicit creditor-debtor relationship between Brown and Banner/Crescent Bank.  Defeating her own argument that this particular payment of proceeds brings Protective within the purview of the LMVSFA, Brown repeatedly recognizes that credit insurance is intended to <u>inure to the benefit of the creditor</u>.  Thus, Protective, as a policy provider of

---

[4]    Brown's transaction is covered by the version of the LMVSFA operative at the time of her purchase in 1996, L<small>A</small>. R.S. 6:951, <u>et seq</u>.  The statute was revised in 1999, L<small>A</small>. R.S. 6:969.33G, <u>et seq</u>., to permit recovery only against the "extender of credit."

4

credit life insurance, properly paid the policy proceeds to the creditor — Crescent Bank.[5]

Further, Protective does not qualify as a "Sales Finance Company" under the LMVSFA.

As provided by the LMVSFA, a "Sales Finance Company" is:

> a person engaged, in whole or in part, <u>in the business of purchasing retail installment contracts</u> from one or more retail sellers or <u>in the business of lending money on promissory notes</u> . . . .

LA. R.S. 6:951(9) (emphasis added). Not only does Protective not qualify as a purchaser (as does Crescent Bank) or lender (as does Banner) under the LMVSFA, but Protective's insurance agreement with Brown is expressly excluded from the "Sales Finance Company" definition which excludes "the pledge of an aggregate number of such contracts to secure a bonafide loan thereon . . . ." <u>Id.</u>

The fact that Protective's insurance agreement was part of or connected to Brown's RIC does not convert Protective into a sales finance company under the LMVSFA. The terms of the LMVSFA simply do not permit its extension to companies providing insurance premiums financed "as part of the same retail installment contract which financed the vehicle." R. 87, 342. Protective's underwriting occurred apart from the transactions that established the legal relationships between Brown, Banner/Crescent Bank — the only relationships referred to in the LMVSFA. Perhaps it would be a

---

[5] Moreover, Protective's payment to Crescent Bank has the same effect as if it had paid Brown, the beneficiary, directly because she would have obligated to pay the balance owed to Crescent Bank, the holder of the RIC.

5

different matter if Protective were both the insurer and the loan creditor, but where, as here, Protective's function as an insurer is distinct from Banner's and Crescent Bank's function as creditors, there is no basis for imposing creditor-liability on the party whose actions fall squarely within the "business of insurance."[6]

Moreover, Protective does not qualify as a "holder" of a retail installment contract, which the LMVSFA defines as:

> the <u>retail seller under or subject to the contract or another assignee entitled to enforce</u> a retail installment contract against the buyer.

LA. R.S. 6:951(10). Here, Protective is neither a "retail seller under or subject to" the RIC. Rather, as the assignee, Crescent Bank was the "holder" entitled to enforce the RIC. That being so, Protective was also not amenable to the LMVSFA's penalty provision, which provides that:

> Any <u>seller</u> or <u>holder</u>, willfully violating R.S. 956 or R.S. 957, shall be barred from recovery of finance charges, delinquency or collection charge on the contract.

LA. R.S. 6:960(B) (emphasis added). Thus, no textual reading of the LMVSFA supports the conclusion that an insurance company in

---

[6] <u>See</u> <u>Perry v. Fidelity Union Life Ins. Co.</u>, 606 F.2d 468, 470 (5th Cir. 1979) (stating that "[w]hen an insurance company offers premium financing as an inducement for persons to purchase policies, it plays two distinct roles in its relationship with the purchaser. On the one hand, the company is an insurer, the purchaser an insured; but on the other hand, the company is a creditor, the purchaser a debtor. The former relationship constitutes the business of insurance, while the latter does not.") (internal marks and citation omitted); <u>Cody v. Comm. Loan Corp. of Richmond Cty.</u>, 606 F.2d 499, 503 (5th Cir. 1979) (discussing <u>Perry</u>'s distinction between the ancillary lending activities of an insurance company and its provision of insurance).

6

Protective's position constitutes a "seller," "sales finance company," or "holder" thereunder.

Nor is Protective vicariously liable under the LMVSFA, LA. R.S. 6:950, et seq. The language of the statute does not support the conclusion that Banner was Protective's licensing agent for lending purposes. To the contrary, Banner (and later Crescent Bank) was Brown's express lender-creditor. Banner did not sell the vehicle, lend money to finance the vehicle, or assign the RIC used to finance the vehicle on behalf of Protective. Brown offers no facts that could demonstrate that Banner and Protective had an agency relationship that would render Protective liable under the LMVSFA.

Because the LMVSFA makes no reference to and contains no definitional provision that covers an insurance company in Protective's position, the statute, as the district court correctly concluded, does not cover companies that provide credit life insurance in relation to a vehicle financing contract.[7]

Finally, we reject Brown's contention that the district court's dismissal of her unjust enrichment claim (which she intertwined with other claims in her complaint) must be reversed. Contrary to Brown's representations, the district court took notice of the claim in its opinion, see R. 85, and, at the least,

_____

[7] Brown's counsel made a certified admission that the LMVSFA does not apply to Protective, specifically arguing that LA. R.S. 6:960B, the penalty provision, may only be imposed against sellers and holders of RICs to the exclusion of insurance companies like Protective. R. 305-08.

7

Protective addressed and refuted the claim at a motions hearing, see R. Vol. 2 at 18. That the district court's written reasons lack delineation does not mean that the claim was inadequately addressed or resolved. If any inference is made, it is that the district court's written findings, when supported by the record, are consistent with its general holding and dismissal order. See First Nat. Bank of Denham Springs v. Indep. Fire. Ins. Co., 934 F.2d 73, 76 (5th Cir. 1991).

For these reasons, we AFFIRM the district court's judgment dismissing Brown's case for failure to state a claim.

**AFFIRMED.**