United States Court of Appeals
Fifth Circuit

**F I L E D**

March 8, 2005

Charles R. Fulbruge III
Clerk

REVISED

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

No. 04-10550

HAROLD CORNISH,

Plaintiff-Appellant,

versus

CORRECTIONAL SERVICES CORP.; ANTHONY KING; HENRY WILSON;
FRANCISCO GARCIA; JACK PATTON; PAUL DONNELLY; JAMES SLATTERY,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas

Before WIENER, BARKSDALE, and DENNIS, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Harold Cornish appeals the dismissal, for failure to state a claim, of his action under 42 U.S.C. § 1983 against his former employer and several of its employees for retaliatory discharge, violative of the First and Fourteenth Amendments. FED. R. CIV. P. 12(b)(6). As alleged in his complaint: Cornish was employed as a correctional officer by Correctional Services Corp. (CSC), a Dallas County, Texas, private corporation which operated a juvenile correctional facility; he reported to CSC's management and state and local authorities CSC's numerous violations in operating the facility; and his employment was terminated for making these

reports.  For the termination, however, CSC was not acting under the requisite color of state law.  **AFFIRMED**.

I.

Because we are reviewing a Rule 12(b)(6) dismissal, the following facts are restated from Cornish's complaint.  The Lyle Medlock Juvenile Facility (the facility) was constructed by Dallas County, Texas.  The Dallas County Commissioner's Court delegated operation of the facility to CSC, a private corporation.

On 17 February 2000, Cornish was employed by CSC to serve as a correctional officer for the facility's drug treatment unit. Each correctional officer was required to be licenced or regulated by the Texas Youth Council, the Dallas County Commissioner's Court, the Dallas County Juvenile Department, the Texas Juvenile Probation Commission, and the Texas Commission on Alcohol and Drug Abuse; to be certified as a juvenile correctional officer by the Texas Juvenile Probation Commission; and to comply with all state and local laws and regulations enacted for the protection and care of the juvenile offenders at the facility.

On 30 September 2000, after approximately six months of employment, Cornish reported to CSC's management and the Texas Youth Commission CSC's numerous violations in operating the facility, including:  CSC failed to provide adequate staffing for the department dedicated to the treatment of juvenile drug offenders; the juveniles were not being administered prescribed

2

medication; they were deprived of adequate medical care; they were not provided with necessary educational materials and teachers; and some CSC employees were not properly certified.

That December, Cornish observed another correctional officer, Tamesha Davis-Jackson, assault a juvenile, without provocation, by stabbing him in the hand with a ballpoint pen. Cornish reported this incident – first to CSC supervisors, Sergeants Williams and Singleton-Davis, and then to both the Texas Department of Protective and Regulatory Services and the Texas Commission on Alcohol and Drug Abuse. Later that month, Cornish reported the assault to the facility's administrator, Anthony King; Davis-Jackson threatened Cornish for his reporting the assault; she was reprimanded and placed on probation; and, subsequently, she left CSC's employment.

In January 2001, Henry Wilson, a CSC employee, informed Cornish that he and King wanted to meet with him. At that meeting, King stated his displeasure with Cornish's report of Davis-Jackson's conduct; and Wilson stated that Davis-Jackson was his friend, and that he was also displeased with Cornish's report to state authorities.

In September 2001, Cornish complained to the United States Department of Labor that CSC had failed to pay some employees, including Cornish, for overtime work. That October, after learning of CSC's intention to rehire Davis-Jackson, Cornish reported that to a member of the Dallas County Commissioner's Court.

3

In November, a correctional officer in the chemical dependancy dorm was removed, leaving it with insufficient staffing. (Texas law requires three staff members for a 24-member juvenile residence during hours in which the juveniles are awake and active.) In order for the dorm to have adequate staffing, Cornish remained on duty, even though his shift had ended. He was reprimanded by CSC for doing so. Cornish filed a complaint with the Texas Commission on Alcohol and Drug Abuse.

Later that month, CSC terminated Cornish's employment, the stated reason being his reports to state and local authorities of CSC's violations. In November 2003, Cornish filed this action under 42 U.S.C. § 1983, claiming retaliatory discharge, violative of the First and Fourteenth Amendments. Named defendants were CSC, King, Wilson, and others (collectively, CSC). (All individual defendants were CSC guards, supervisors, or wardens who supervised Cornish.)

In December 2003, CSC moved to dismiss, pursuant to Rules 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief could be granted). CSC contended: because it was a private corporation, its employment decisions were not acts under color of state law, a necessary element for bringing a claim pursuant to § 1983; and, therefore, Cornish's complaint failed to state facts sufficient for an action

4

under § 1983. Pursuant to Rule 12(b)(6), the complaint was dismissed for failure to state a claim.

## II.

A Rule 12(b)(6) dismissal is reviewed *de novo*, to determine "whether[,] in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief". *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quotation omitted). "However, we will not strain to find inferences favorable to the plaintiff[]." *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (quotation omitted). For that review, we may not look beyond the pleadings (including any attachments thereto). *Collins*, 224 F.3d at 498. "A Rule 12(b)(6) motion should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 348 (5th Cir. 2002) (citation omitted).

Texas provides a claim for professionals terminated or discriminated against for reporting child abuse or neglect. *See* TEX. FAM. CODE ANN. § 261.110 (2002) ("An employer may not suspend or terminate the employment of ... a person who is a professional and who in good faith: (1) reports child abuse or neglect to: (A) the person's supervisor; (B) an administrator of the facility where the person is employed; (C) a state regulatory agency; or (D) a law

5

enforcement agency ...."); *see also* TEX. FAM. CODE ANN. § 261.101(b) ("The term [professional] includes ... juvenile detention or correctional officers."). Remedies under § 261.110 include: actual and exemplary damages; court costs; reasonable attorney's fees; reinstatement to former position, compensation, benefits, and seniority rights; and compensation for wages lost during the termination. In any event, Cornish seeks relief only on a federal law claim under § 1983.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was *committed by a person acting under color of state law*." **West v. Atkins**, 487 U.S. 42, 48 (1988) (emphasis added; citation omitted). Because Cornish's complaint claims retaliatory discharge, violative of the First and Fourteenth Amendments, the first prong of § 1983 is satisfied.

Therefore, at issue is whether CSC was acting "under color of state law" when it terminated Cornish's employment, with the critical inquiry being whether "the alleged infringement of federal rights [can be] fairly attributable to the State". **Rendell-Baker v. Kohn**, 457 U.S. 830, 838 (1982) (quotation omitted). Restated, "[m]ere[] private conduct, no matter how discriminatory or wrongful", is excluded from § 1983's reach. **Richard v. Hoechst Celanese Chem. Group, Inc.**, 355 F.3d 345, 352 (5th Cir. 2003),

6

*cert. denied*, 125 S. Ct. 46 (2004) (quoting **American Mfrs. Mut. Ins. Co. v. Sullivan**, 526 U.S. 40, 50 (1999)); *see also* **Rendell-Baker**, 457 U.S. at 844 (White, J., concurring) ("[T]he critical factor is ... [whether] the *employment decision* was itself based upon some rule of conduct or policy put forth by the State." (emphasis added)).

The Supreme Court has utilized a number of tests for deciding whether a private actor's conduct can be fairly attributable to the State. *See* **Richard**, 355 F.3d at 352 (summarizing tests); **Bass v. Parkwood**, 180 F.3d 234, 241-43 (5th Cir. 1999) (same). The "public function test" examines whether the private entity performs a function which is "exclusively reserved to the State". **Flagg Brothers, Inc. v. Brooks**, 436 U.S. 149, 158 (1978). Under the "state compulsion test", a private actor's conduct is attributable to the State when it exerts coercive power over the private entity or provides significant encouragement. *See* **Adickes v. S. H. Kress & Co.**, 398 U.S. 144, 170-71 (1970). The "nexus" or "state action test" considers whether the State has inserted "itself into a position of interdependence with the [private actor, such] that it was a joint participant in the enterprise". **Jackson v. Metro. Edison Co.**, 419 U.S. 345, 357-58 (1974); *see also* **Lugar v. Edmonson Oil Co.**, 457 U.S. 922, 937 (1982). And, under the "joint action test", private actors will be considered state actors where they are "willful participant[s] in joint action with the State or its

7

agents". ***Dennis v. Sparks***, 449 U.S. 24, 27 (1980). The Supreme Court has not resolved "[w]hether these different tests are actually different in operation or simply different ways of characterizing [this] necessarily fact-bound inquiry ...." ***Lugar***, 457 U.S. at 939.

Deciding whether a deprivation of a protected right is fairly attributable to the State "begins by identifying the specific conduct of which the plaintiff complains". ***Sullivan***, 526 U.S. at 51 (quotation omitted). Here, that conduct is terminating Cornish's employment in retaliation for his reporting CSC's misconduct to state and local authorities. Therefore, at issue is whether *CSC's decisions as an employer* are fairly attributable to the State. *See* ***George v. Pacific-CSC Work Furlough***, 91 F.3d 1227, 1230 (9th Cir. 1996), *cert. denied*, 519 U.S. 1081 (1997) ("The relevant inquiry is whether [defendant's] *role as an employer* was state action ....") (emphasis in original; quotation omitted).

The "[a]cts of ... private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts". ***Rendell-Baker***, 457 U.S. at 841. Moreover, "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment". ***Blum v. Yaretsky***, 457 U.S. 991, 1004 (1982) (quoting ***Metro. Edison Co.***, 419 U.S. at 350). To make the requisite showing of state action by a

8

regulated entity, Cornish must establish "a sufficiently close nexus between the State and *the challenged action* of the regulated entity".  *Id.* (emphasis added).

Cornish's complaint claims:  "Because [CSC] provides services for a government entity that are required by law to be performed by the government[,] it acts under color of law".  In addition, the complaint states that CSC guards working at the facility are required to obtain the same certifications, and are regulated by the same government entities, as are guards employed by the State.  In essence, Cornish is claiming CSC performs a public function "exclusively reserved to the State".

For this public function test, and as CSC conceded in district court, it acts under color of state law in providing juvenile correctional services to Dallas County.  *See* **Pacific-CSC Work Furlough**, 91 F.3d at 1230 ("[Defendants] concede that incarceration is a traditionally exclusive state function.").  The issue, however, is whether CSC acted under color of state law in terminating Cornish's employment, *not* whether its providing juvenile correctional services was state action.  *See* **id.** ("An entity may be a state actor for some purposes but not for others.").  Cornish's complaint alleges no facts concerning why CSC's role *as an employer* constituted state action.

Moreover, the complaint contains no factual allegations that Dallas County exerted coercive power or provided significant

9

encouragement for CSC's decision to terminate Cornish's employment. Therefore, CSC's conduct in terminating Cornish is not fairly attributable to Dallas County under the state compulsion test. Similarly, the complaint contains no allegations that Dallas County willfully participated, or was a joint participant, in CSC's decision to terminate Cornish's employment. Therefore, the employment decision is not fairly attributable to Dallas County under either the nexus/state action test or the joint action test. In sum, Cornish has failed to plead *any* facts alleging that the State encouraged, compelled, or was in any way involved in CSC's decision to terminate his employment.

Viewing the complaint in the light most favorable to Cornish, and accepting all facts alleged as true, the complaint fails to allege facts establishing that CSC's decision to terminate Cornish's employment is fairly attributable to Dallas County or the State of Texas. Cornish can prove no set of facts in support of his claims under § 1983 which would entitle him to relief. Accordingly, the complaint was properly dismissed for failure to state a claim.

III.

For the foregoing reasons, the judgment is

*AFFIRMED.*

10