NAVO SOUTH DEVELOPMENT
PARTNERS, LTD., Plaintiff,

v.

DENTON COUNTY ELECTRIC
COOPERATIVE, INC. d/b/a
CoServ Electric, Defendant.

Case No. 4:09CV00072.

United States District Court,
E.D. Texas,
Sherman Division.

Oct. 23, 2009.

Brian Vanderwoude, Winstead PC, Dallas, TX, for Plaintiff.

Craig Buck Florence, Mark W. Bayer, Samuel E. Joyner, Gardere Wynne Sewell, Dallas, TX, for Defendant.

### *MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

RICHARD A. SCHELL, District Judge.

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636. On July 21, 2009, the amended report of the

Magistrate Judge was entered containing proposed findings of fact and recommendations that Defendant's Motion to Dismiss (Dkt.11) be GRANTED.

The court, having made a *de novo* review of the objections raised by Plaintiff, as well as Defendant's response, and Plaintiff's reply, is of the opinion that the findings and conclusions of the Magistrate Judge are correct, and the objections of Plaintiff are without merit. Therefore, the court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of this court. Defendant CoServ's Motion to Dismiss Complaint (Dkt. 11) is GRANTED, and all claims against Defendant are dismissed with prejudice.

**IT IS SO ORDERED.**

## *REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE*

DON D. BUSH, United States Magistrate Judge.

Now before the Court is Defendant's Motion to Dismiss pursuant to FRCP R. 12(b)(1) and (6) (Dkt. 11). After reviewing the record and briefs, the Court finds that the motion should be granted, as stated below.

### BACKGROUND

Plaintiff, Navo South Development Partners, Ltd. ("Navo"), is a residential real estate developer. Defendant, Denton County Electric Cooperative, Inc. ("CoServ"), is a not-for-profit, member-owned electric cooperative which provides electricity to in excess of 142,000 homes and businesses in the North Texas area. CoServ and Navo previously entered into an electrical contract in 2004 for Navo's Phase I development. In Phase I, CoServ fronted 100% of the costs to extend electrical lines into Navo's Subdivision while requiring Navo to pay a minimal amount for street lights.

The present litigation stems from changes made to the Phase II contract. For Phase II, Navo alleges that CoServ required title to the infrastructure and additionally required Navo to pay for a significant amount of the infrastructure costs—a departure from the Phase I agreement which served as the catalyst for the present litigation. Navo contends that this payment in an amount exceeding $700,000 is in effect a taking of its property without due process of law.

Faced with the prospect of either paying the higher costs for development or no electricity, Navo proceeded with the former course. Navo developed Phase II of the Subdivision and contends that, because CoServ was responsible for the Phase I electrical installation and development, it is economically, legally, and logistically infeasible to switch providers. Accordingly, Navo contends that the Phase II agreement was signed under duress and is, in fact, a contract of adhesion.

Navo premises jurisdiction under 15 U.S.C. §§ 2, 15, and 26 (Monopoly and antitrust violations) claiming that CoServ has participated in a contract to fix prices in restraint of trade, and compelled Plaintiff to pay unreasonably high prices.[1] Navo also claims that CoServ has violated Navo's constitutional rights under 42 U.S.C. § 1983 (U.S. Civil Rights Violations) stemming from a deprivation of federal constitutional rights under color of state law. Navo contends that all remaining claims arise out of a common nucleus of operative facts, and thus federal jurisdiction is proper under 42 U.S.C. §§ 1331, 1337 and 1367.

---

1. Navo seeks no injunctive relief by its complaint.

## STANDARD

Defendants seek to dismiss this case pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure. A district court may dismiss a complaint if the plaintiff fails to allege facts to support subject matter jurisdiction. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001). The Court may look to the complaint alone, or as supplemented by undisputed facts as noted in the record, or as supplemented by undisputed facts plus the court's resolution of disputed facts. *Id.* at 161. Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED R. CIV. P. 12(b)(6). The Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996). In addition, all reasonable inferences are to be drawn in favor of the plaintiff's claims. *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997). Dismissal for failure to state a claim does not require, however, an appearance that, beyond a doubt, the plaintiff can prove no set of facts in support of claim that would entitle him to relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1968, 167 L.Ed.2d 929 (2007). Rather, to survive a 12(b)(6) motion to dismiss, a plaintiff must show, after adequately stating his claim, that it may be supported by some set of facts consistent with the allegations in the complaint. *Id.*

## ANALYSIS

The Court examines Plaintiff's claims under the well-established principles noted above, in conjunction with the arguments raised by the parties and the facts alleged.

### *Violations of 42 U.S.C. § 1983*

Navo's 1983 claim is hard to discern from the Complaint. In fact, the only mention of Section 1983 is that CoServ is liable for violation of Navo's constitutional rights because CoServ has deprived Navo of its federal constitutional rights under color of state law. At best, it appears that CoServ's constitutional claim rests in its allegation that CoServ required a conveyance of certain property to facilitate construction of the lines. Navo also complains that CoServ's actions have unreasonably interfered with its right to use and enjoy its property. CoServ's brief fails to assist the Court in determining whether a Section 1983 claim against a cooperative acting under the color of state law requires heightened pleadings or only the bare bones pleading acceptable for municipal corporations. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Giving Navo the benefit of the doubt, the Court adopts the bare bones analysis.

In any event, it is well established that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under the color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). It does not, by its own terms, create substantive rights. *Id.* at 145, 99 S.Ct. 2689.

Navo contends that its property was taken. Yet, Navo *conveyed* the property to CoServ. Although Navo contends that such was under duress, there is no constitutional right to be free of duress in negotiating a contract, even if the other

party holds all the cards. Even if Navo has an arguable claim for inverse condemnation, that claim is not ripe. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). A property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure furnished by the state and been denied just compensation. *Id.* at 194–95, 105 S.Ct. 3108. Therefore, the Court finds that, under the pleadings before it, Navo has not stated a violation of a federally protected right as to taking.

█ It has not pursued the state remedies available to it, choosing to short circuit the process in this Court. The contract between the parties requires that Navo grant CoServ a non-exclusive easement. A non-exclusive easement allows the underlying fee holder to sell additional easements within the preexisting easements. *Westtex 66 Pipeline Co. v. Baltzell,* 2003 WL 21665312 (Tex.App.-Houston [1st Dist.] 2003). The agreement clearly notes that by the use of the term non-exclusive that CoServ shares use of the easement with other parties, including the possessor of the servient estate, Navo. It is hard to fathom how a non-exclusive easement, which provides services to the development, unreasonably interferes with Navo's right to use and enjoy its property, especially since Navo also has the right to use the easement.

Of course, the real thorn in Navo's side is the sum of $700,000 which it contends has been extorted from it by CoServ's "merciless actions." Navo relies on *Simi* support of its position that even if one avenue of redress is closed, not all is lost. *Simi Inv. Co., Inc. v. Harris County,* 236 F.3d 240 (5th Cir.2000). In *Simi,* the Court recognized that a takings analysis did not exhaust all constitutional claims. *Id.* at 248.

Navo claims that its due process rights have been violated as in the *Simi* case. However, its pleadings are directed to the issue of taking or an exaction. Although Navo references the Fourteenth Amendment, there is no independent pleading which demonstrates what constitutional rights have been violated, other than alleging an "unlawful taking." Although Navo alleges that CoServ has unreasonably interfered with Navo's right to use and enjoy its property, the only restriction pursuant to the agreement of the parties is that CoServ receives a non-exclusive easement to run electricity to the property which is essential for its development. The Court finds that Navo has not demonstrated by its pleadings how it has been deprived of any other federally protected right.

Such should end the Section 1983 analysis. However, assuming, given the broadest, most liberal, expansive, and gratuitous reading possible, that Navo has stumbled on to some other federally protected right, the Court addresses whether there is any showing that CoServ acted under the color of state law.

For federal jurisdiction in this Court as to its 1983 claims, Navo must show that CoServ acted under the color of state law. The only reference made in Navo's Response to the Motion to Dismiss is that CoServ was acting under color of state law pursuant to Chapter 37 of the Texas Utilities Code as owner of the sole certificate of convenience and necessity from the State and that CoServ is, in effect, a government entity. If CoServ is not a government entity or acting under the color of law, then there is no jurisdiction under 42 U.S.C. § 1983.

█ Navo must demonstrate that CoServ, a private organization, acted under the color of state law. Failure to demonstrate such undermines and eviscerates Navo's Section 1983 claim. The tradi-

tional definition of "acting under color of state law" requires that the defendant in question have exercised power possessed by virtue of state law and "made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The relevant inquiry is whether "the alleged infringement of federal rights [can be] fairly attributable to the State." *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). In other words, was the decision to require the payment and conveyance of property based upon some rule of conduct or policy set forth by the State. The flip side of the analysis is that "the Due Process Clause of the Fourteenth Amendment does not, as a general matter, require the government to protect its citizens from the acts of private actors." *Morin v. Moore,* 309 F.3d 316, 321 (5th Cir. 2002) (citing *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)). As such, private persons generally may not be held liable under Section 1983. *See Richardson v. Fleming,* 651 F.2d 366, 371 (5th Cir.1981). The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for the purposes of the Fourteenth Amendment. *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (quoting *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 350, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)). To make the requisite showing of state action by a regulated entity, therefore, Navo must establish "a sufficiently close nexus between the State and *the challenged action* of the regulated entity." *Id.* (emphasis added). In addition, an entity may be a state actor for some purposes but not others. *Cornish v. Corr. Serv. Corp.,* 402 F.3d 545 (5th Cir. 2005).

The Supreme Court has addressed state action as it relates to regulated utility companies. *Jackson,* 419 U.S. at 346, 95 S.Ct. 449. In *Jackson,* the Court held that whether state action is present does not require examination of the overall nature of the utility company, nor does it require examination of the overall regulatory scheme thrust upon it, but rather the only examination is into the character of the specific conduct that is challenged. *Id.* at 350–51, 95 S.Ct. 449. Moreover, even if the state conferred a monopoly on the utility company, simply because the business is subject to state regulation does not convert its action into state action. *Id.* Instead, the relevant inquiry for determining whether state action is present is to determine whether there is a sufficiently close nexus between the state and the challenged action of the regulated entity. *Id.* at 351, 95 S.Ct. 449.

In applying the facts presented before the Court, the Court must first look to whether the alleged deprivation has been caused by CoServ's exercise of privilege granted by the state, or, alternately, if the deprivation has been caused by conduct for which the state is responsible. The Fifth Circuit has addressed the criteria necessary for showing an alleged deprivation committed by a person acting under color of state law, so as to grant entitlement to protection under 42 U.S.C. § 1983. *Cornish,* 402 F.3d at 545. In *Cornish,* a terminated employee of a private corporation brought a § 1983 claim. *Id.* at 547–48. The terminated employee alleged that the county had delegated the operation of a state-funded juvenile correctional facility to the private corporation. *Id.* The court held that the alleged infringement of state rights, which was the unlawful termination of the employee, was not fairly attributable to the state. *Id.* at 549 (citing to *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)). Accordingly, the court upheld the defendant's motion to

dismiss for failure to state a claim. *Id.* at 551.

When addressed with similar issues, other courts have held that electric cooperatives are not state actors. *Jackson,* 419 U.S. at 350, 95 S.Ct. 449; *McCarthy v. Middle Tenn. Elec. Membership Corp.,* 466 F.3d 399, 412 (6th Cir.2006); *Carter v. Buckeye Rural Elec. Coop.,* 2001 WL 1681104, at *5 (S.D.Ohio 2001) (unpublished opinion). Electric cooperatives are inherently entwined with the state due to state legislative mandates and regulations. However, the fact that a private business is subject to state regulation does not convert it to a state actor. *McCarthy,* 466 F.3d at 412.

■ In applying both the *Jackson* and *Cornish* holdings to the facts before this Court, it appears CoServ's conduct is not fairly attributable to the state. In *Jackson,* a customer brought suit against a privately owned utility company, which held a certification of public convenience similar to the one at issue in this case. The Court dismissed the complaint for lack of state action, as the utility company's action was not sufficiently connected to the state for the purposes of classifying it as state action, even though the utility was heavily regulated and possessed a monopoly. In *Cornish,* the private corporation was state-funded, and even under those facts, the alleged infringement of state rights was not found to be attributable to the state. In contrast to the case at bar, Defendant is not associated with the state, and does not receive funding from the state. Moreover, it does not act on behalf of the state. In sum, Navo has failed to plead any facts alleging that the State encouraged, compelled, or was in any way involved in, CoServ's decision to charge Navo for provision of services or require a non-exclusive easement

In this case, CoServ is undisputedly a not-for-profit, private organization which receives funding solely from its members. Navo asserts that CoServ's actions are somehow chargeable to the State because the State has granted CoServ the power of eminent domain. However, the grant of such power does not alter CoServ's status as a private organization. Many private companies have the power of eminent domain. *See, e.g.,* Tex. Nat. Res.Code. § 111.019 *et seq.* (granting common carriers the power of eminent domain when "necessary for the construction, maintenance, or operation of the common carrier pipeline"); Tex.Rev.Civ. Stat. art. 1417 (granting telegraph corporations the power to condemn property); Tex.Rev.Civ. Stat. art. 1435a (granting certain private oil and gas companies the power of eminent domain); Tex.Rev.Civ. Stat. Art. 1439 (granting power of condemnation to sewer companies); Tex.Rev.Civ. Stat. art. 6535 (granting certain railroad companies the power of eminent domain); Tex.Rev.Civ. Stat. art. 1433 (provides water companies the right of eminent domain). The power of eminent domain is not a perforce one of state action. There is simply no showing that CoServ has acted under the color of authority of state law.

### Sherman Act Claims

As to the antitrust claims, the Court begins with the basics. Sections 1 and 2 of the Sherman Act prohibit restraints of trade and monopolization. Section 1 reads: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1. Section 2 of the Sherman Act states: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or

with foreign nations, shall be deemed guilty of a felony." 15 U.S.C. § 2.

The Fifth Circuit has previously held that a Section 2 monopolization charge is difficult to apply due to the unique status of a regulated electric utility. *Almeda Mall v. Houston Lighting & Power Co.*, 615 F.2d 343 (5th Cir.1980). Although the Texas Legislature has taken steps to deregulate the industry, there is still regulated conduct. An electric cooperative must obtain a certificate of public convenience and necessity for service in a particular area including the area served by another provider. *See* Tex. Util.Code Ann. § 37.051. A certificate holder must serve every consumer in the certificated area and provide continuous and adequate service. Tex. Util.Code Ann. § 37.151. Withholding service is restricted. Tex. Util. Code Ann. § 37.152. The right to sell the certificate is not unencumbered. Tex. Util.Code Ann. § 37.154. Service to be provided shall be safe, adequate, efficient and reasonable. Tex. Util.Code Ann. § 38.001. The electric utility's rule making powers are limited. Tex. Util.Code Ann. § 38.003. An electric utility may not engage in a practice that tends to restrict or impair certain competition. Tex. Util. Code Ann. § 38.022. The Commission is charged with protecting against anti-competitive practices. Tex. Util.Code Ann. § 39.157(e).

■ Navo alleges that CoServ's monopolistic position is due to the fact that it is the only certificated provider in the geographic region at issue. However, CoServ's position is historically rooted in prior legislation as well as deregulation. There is no pleading that Navo had a specific intent to monopolize. *Woods Exploration & Producing Co. v. Aluminum Co. of Am.*, 438 F.2d 1286 (5th Cir.1971). There is no allegation that CoServ has engaged in any conduct to destroy competition. CoServ is the sole provider be-

cause it has filed for a Certificate and been awarded such. No other providers have filed. CoServ has done nothing to discourage other providers from filing for a Certificate. CoServ had to apply for and be approved for a certificate for convenience and necessity. CoServ's actions did not foreclose other providers and the fact that no other providers have applied does not make CoServ a monopolist.

■ As to Navo's complaints about "price fixing," nothing in the Complaint can be construed to be a violation of 15 U.S.C. § 14. It is even questionable that CoServ's contract and services would fit into the definition of goods, wares, merchandise, machinery, supplies or other commodities as contemplated by the Act. There must be some showing that the price quoted by Coserv was conditioned on the premise that Navo prefer CoServ over some other supplier.

In suits brought under §§ 1 or 2 of the Sherman Act, the Fifth Circuit has held that standing to sue exists only if a plaintiff shows: (1) injury-in-fact, which is an injury to the plaintiff proximately caused by the defendant's conduct; (2) *antitrust injury;* and (3) proper plaintiff status, meaning that other parties are not better situated to bring suit. *See Doctor's Hosp. of Jefferson, Inc. v. Southeast Med. Alliance, Inc.*, 123 F.3d 301, 305 (5th Cir.1997) (emphasis added). In *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, the Supreme Court described "antitrust injury" as an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful ... It should, in short, be the type of loss that the claimed violations ... would be likely to cause." *See Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). CoServ claims that Navo has failed to show an anti-trust injury.

Navo alleges that, in Phase I, it paid far less for lights and also received a developer allowance of $1800 per lot from CoServ. This same benefit was not available in Phase II. Yet, CoServ was the only electric provider for Phase I and II. When it accorded an allowance to Navo, it was not a monopolist. However, when it chose to have the developer front some of the costs, it was a monopolist.

Navo first complains that CoServ required that title to the infrastructure be in CoServ's name. The agreement references infrastructure as cables, pedestals, and service lines as well as manholes. In other words, equipment needed to get electricity to a property. The agreement states that CoServ will install, own, operate and maintain the infrastructure. There is nothing in the antitrust laws which prohibits a supplier of electrical power from owning the infrastructure used to supply power even if part or all of the cost is borne by the developer.

Next, Navo claims that it was required to pay infrastructure costs. The tariff on file with the Commission provides that a developer will be required to pay in advance of construction an estimated cost for the electrical facilities including the infrastructure. The Court finds that such a requirement is not in violation of the antitrust laws.

Navo also complains that CoServ did not increase its $1,800/lot developer contribution to reflect an increase in the materials cost. However, the $1800 was an allowance provided by the filed tariff.[2] Again, the Court finds that CoServ's failure to change its tariff rate in light of increased costs of construction is meaningless.

Navo also complains that CoServ uses a captive contractor to install the infrastructure and it is difficult, if not impossible, to use another contractor. However, under the agreement, CoServ—not Navo—commits to install the infrastructure. As for damages, Navo seeks to recover damages for the value of the assets conveyed to CoServ. However, the only conveyance referenced in the agreement is a *non-exclusive* easement. Again, this is not the type of injury contemplated by the antitrust laws. Much of Navo's complaint as to antitrust is merely boiler plate and conclusary. The Court finds that Navo's antitrust claim should be dismissed for lack of standing.

The Court further finds that CoServ is not a monopoly as contemplated by the Sherman Act. Mere possession of a sole provider in a market share is not indicative of a monopoly in the sense that violates Section 2 of the Sherman Act. *United States v. Aluminum Co. Of Am.*, 148 F.2d 416, 432 (2d Cir.1945). Instead, single-company dominance in a particular industry is indicative that there is no competition in the marketplace as there typically is. *Id.* Accordingly, a single company does not violate Section 2 of the Sherman Act when the monopoly has been "thrust upon it" (i.e. when there is no competition). *Id.*

In this case, Navo cannot show the anti-competitive conduct necessary to successfully establish a Sherman Act claim. Navo alleges single-company dominance in the market. Navo also alleges an intent to engage in anti-competitive conduct by erecting barriers to competition such as making it prohibitively difficult to use third party contractors. It appears that Navo also takes issue with the state's authorization of CoServ as the sole provider of electricity in the area. However, Co-

---

**2.** Although not specifically raised, any antitrust claims as to rates charged by the tariff may be barred by the "filed rate" doctrine.

*See Texas Commercial Energy v. TXU Energy, Inc.,* 413 F.3d 503 (5th Cir.2005).

Serv did not enact the state's certification measures and has no control over the state's grant of certificates to provide licenses in the area in question. It is apparent that the cooperative is in a position of economic power. But the mere possession of such power is not unlawful. It must also have been used to Navo's detriment. It is not mere monopoly (a status or condition), but rather monopolization (an activity) that Section 2 condemns. *See City of Mt. Pleasant Iowa v. Assoc. Elec. Co-op, Inc.*, 838 F.2d 268 (8th Cir.1988).

Because of Navo's failure to demonstrate an antitrust injury, a failure to show anticompetitive conduct and failure to demonstrate that CoServ is a monopoly as contemplated by the antitrust laws, the Court dismisses the antitrust claims.

The Court finds that the remaining supplemental claims should also be dismissed. 28 U.S.C. § 1367(c)(3).

## RECOMMENDATION

Based upon the foregoing, the Court recommends that Defendants' Motion to Dismiss (Dkt.12) be GRANTED.

Within ten (10) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir.1988).

**SIGNED this 20th day of July, 2009.**