**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 12, 2011

No. 10-20606

Lyle W. Cayce
Clerk

ELIMELECH SHMI HEBREW,

Plaintiff - Appellant

v.

HOUSTON MEDIA SOURCE,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
(4:09-CV-3274)

Before CLEMENT, OWEN, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Elimelech Shmi Hebrew appeals the grant of summary judgment in favor Houston Media Source ("HMS") on his claim pursuant to 42 U.S.C. § 1983 that HMS violated his freedom of speech rights under the First Amendment. For the reasons set forth below, we AFFIRM the judgment below.

FACTS AND PROCEEDINGS

HMS is a Texas 501(c)(3) corporation that has operated a public access cable television channel since 1986 pursuant to a contract with the City of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20606

Houston (the "City"). The funding that HMS receives pursuant to its contract with the City comes from access subscriber fees collected from each of the City's cable franchisees. The cable franchisees charge each cable customer inside the Houston city limits an access subscriber fee. The cable franchisees then make payments to the City, and the City gives a portion of those funds to HMS "through a process and formula" set out in the contract between HMS and the City. HMS does not receive funds from municipal tax revenue.

HMS is not a state agency. It has its own Board of Directors, and the City is not involved in its day-to-day activities. HMS provides access to television production facilities along with equipment, training, and air time to groups and individual members of the public in the Houston area. Access to these services allows the groups and individuals to present television programming to subscribers of five cable operators, reaching a potential audience of more than one million households.

Hebrew is President and Chief Executive Officer of Divine Unity 1, Inc., ("DU1") a Texas 501(c)(3) corporation "dedicated to unifying all people, nations, and faiths to operate and live with divine morals and standards." DU1 used its television program, *Gathering the Lost Children of Israel* ("*Lost Children*") "to relay the message given to [Hebrew] by God to fulfill its objective of unifying and enlightening all through truth." Beginning in 2006, Teboho Matlamela was the producer of *Lost Children*, which originally aired Wednesday nights at 7:30 p.m. The show apparently aired without incident until 2008, when HMS began asking Matlamela to edit submitted episodes to eliminate scenes that HMS said violated its content policies. By February 2009, Matlamela was allegedly being asked to "continuously edit" episodes of the show to remove "adult" or "indecent" content before HMS would air them at an evening time slot. HMS alleges that the submitted episodes contained nudity, depictions of sex, and studio conversations

2

No. 10-20606

involving profanity. Pursuant to HMS policies, such "adult" content was only aired in the hours between midnight and 6:00 a.m.

Early in 2009, Hebrew began complaining to HMS, contending that the station was violating his free speech rights. Meanwhile, the objectionable content of the *Lost Children* episodes apparently increased. After a series of meetings, letters, and phone calls between DU1 management and HMS in which nothing was resolved, HMS informed Matlamela that *Lost Children* had been suspended because of Matlamela's repeated failure to indicate, on the programming contracts submitted with each episode, that the shows contained adult material. Matlamela was also banned from using HMS's production facilities.

Hebrew initiated the lawsuit underlying this appeal on October 9, 2009, asserting First Amendment violations under § 1983 and seeking damages of one billion dollars. Both parties filed motions for summary judgment and later consented to disposition of the case by a magistrate judge. On July 20, 2010, the magistrate judge issued a 19-page memorandum opinion applying settled Supreme Court caselaw granting HMS's motion and denying Hebrew's on the ground that Hebrew had presented no evidence that HMS was a state actor. The court agreed, however, to delay entry of final judgment for fourteen days, giving Hebrew, who was proceeding pro se, the opportunity to submit additional evidence in support of his claim. Although he did file a motion for reconsideration within the fourteen day window, Hebrew did not submit additional evidence, and the magistrate judge entered final judgment in favor of HMS on August 16, 2010. This timely appeal followed.

STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo, applying the same legal standards as the trial court. Like the magistrate judge, we view the evidence and inferences from the summary judgment record in the light most

No. 10-20606

favorable to the nonmovant. Summary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009); *see also* FED. R. CIV. P. 56(a).

## DISCUSSION

In general, private entities are not liable to suit under § 1983. To survive HMS's motion for summary judgment, Hebrew must present evidence that HMS was "acting under color of state law," *West v. Atkins*, 487 U.S. 42, 48 (1988), such that its conduct was "fairly attributable to the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). Hebrew challenges the magistrate judge's determination that he failed to raise a genuine factual issue concerning whether HMS is a "state actor."

"The Supreme Court has utilized a number of tests for deciding whether a private actor's conduct can be fairly attributable to the State." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549–50 (5th Cir. 2005) (summarizing tests). Relevant here, the "nexus" or "state action test" considers whether the State has inserted "itself into a position of interdependence with the [private actor, such] that it was a joint participant in the enterprise." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357–58 (1974).

"Deciding whether a deprivation of a protected right is fairly attributable to the State begins by identifying the specific conduct of which the plaintiff complains." *Cornish*, 402 F.3d at 550. Hebrew's claim is focused on HMS's determination that the *Lost Children* episodes submitted by Matlamela were "indecent" under HMS's policies. As the magistrate judge noted, Hebrew contended "that, when measured against [HMS]'s own rules and procedures, none of the episodes being submitted needed to be edited for explicit content." In his brief on appeal, Hebrew complains that HMS "censored [his] shows, having

Mr. Matlamela reedit them to [HMS] discretion." Importantly, Hebrew argues only that his shows were treated unfairly and that HMS wrongly characterized them as containing indecent content; he does not challenge HMS's policy of airing indecent or adult programming in late-night time slots.

That Hebrew does not challenge HMS's general indecency policy is critical because he has presented no evidence that the City or any government official was involved in HMS's decisions concerning the treatment of the programming submitted by DU1. Hebrew has submitted evidence that HMS's contract with the City requires HMS to maintain policies that restrict the airing of indecent content to certain times, but such evidence does not demonstrate that the City had any role in determining whether episodes of *Lost Children* were properly characterized as indecent. Although his pleadings are filled with accusations against various City officials, Hebrew has not produced any evidence the City was involved with HMS's content-related decisions or influenced the way HMS enforced its indecency policies. Evidence submitted by HMS, and many of Hebrew's own pleadings, confirm that HMS personnel acted without input from any City officials in their dealings with Hebrew and Matlamela concerning the airing and content editing of *Lost Children*. The City's role in formulating or influencing HMS's general policy, which Hebrew does not challenge, is insufficient to make the City a "joint participant" in HMS's treatment of the *Lost Children* programs. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982) ("Acts of . . . private contractors do not become acts of the government by reason of their . . . engagement in performing public contracts."); *see also Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State."). As set forth in the ruling below, Hebrew has not succeeded in showing that HMS's complained-of actions could reasonably be attributed to the City.

No. 10-20606

## CONCLUSION

For the above reasons, the judgment of the magistrate judge is AFFIRMED.