# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

────────

No. 15-50331

────────

United States Court of Appeals
Fifth Circuit

**FILED**

July 27, 2016

Lyle W. Cayce
Clerk

KIMBERLY DOE; CONSTANCE ROE; SARAH DOE; BETH ROE; EMILY ROE; RAQUEL DOE,

        Plaintiffs - Appellants

v.

UNITED STATES OF AMERICA,

        Defendant – Appellee

----------------------------------------------------------------------------

SARA DOE, on behalf of herself and all others similarly situated; KIMBERLY DOE, on behalf of herself and all others similarly situated; RAQUEL DOE, on behalf of herself and all others similarly situated; ANNA ROE, on behalf of herself and all others similarly situated; GEORGINA ROE, on behalf of herself and all others similarly situated; EMILY ROE, on behalf of herself and all others similarly situated; BETH ROE, on behalf of herself and all others similarly situated; CONSTANCE ROE, on behalf of herself and all others similarly situated,

        Plaintiffs - Appellants

v.

WILLIAMSON COUNTY; CORRECTIONS CORPORATION OF AMERICA (CCA); EVELYN HERNANDEZ, former CCA Facility Administrator; DONALD DUNN,

        Defendants – Appellees

No. 15-50331

Appeal from the United States District Court
for the Western District of Texas

Before SOUTHWICK and COSTA, Circuit Judges, and OZERDEN,* District Judge.

LESLIE H. SOUTHWICK, Circuit Judge:

Several female alien detainees filed lawsuits alleging claims under 42 U.S.C. § 1983 and the Federal Tort Claims Act, among others. The district court ruled in the defendants' favor on various grounds. We AFFIRM in part, and REVERSE and REMAND in part.

FACTS AND PROCEDURAL BACKGROUND

The plaintiffs are eight female aliens who were apprehended by U.S. Immigration and Customs Enforcement ("ICE"). Pending a determination of their immigration status, the plaintiffs were housed in T. Don Hutto Residential Center (the "detention center") in Taylor, Texas, which is owned and operated by Corrections Corporation of America ("CCA"). A service agreement between ICE and Williamson County, the county in which the detention center is located, and a subcontract delegating all of Williamson County's responsibilities related to the detention center to CCA, facilitate the detention center's operations. The detention center houses only female aliens in ICE custody.

In the various operative complaints in this case, the plaintiffs alleged that they individually posted bond, permitting them to be released at different times pending hearings to resolve their immigration status. Donald Dunn, a

---

* District Judge of the Southern District of Mississippi, sitting by designation.

No. 15-50331

male CCA officer, was each time tasked with transporting the plaintiffs by himself from the detention center to the airport or bus station. This occurred between October 2009 and May 2010. The service agreement, and the subcontract by incorporation, stated an ICE policy requiring that an officer of the same sex as a detainee be present during transport. The plaintiffs asserted that before they reached their destinations, Dunn stopped at a gas station or house, or pulled off to the side of the road, and sexually assaulted them. Dunn later pled guilty to state and federal charges.

The plaintiffs filed lawsuits against the United States, Williamson County, CCA, Dunn, and Evelyn Hernandez, the former CCA facility administrator, among others.[1] The suits were later consolidated into the present action. The only claims relevant to this appeal are under 42 U.S.C. § 1983 and the Federal Tort Claims Act, 28 U.S.C. § 1346(b), as well as several state law claims.[2] In a series of orders in 2013 and 2014, the district court dismissed all of the plaintiffs' federal claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56(a). The plaintiffs filed an amended complaint by order of the district court in November 2014 asserting only state law claims against CCA, Hernandez, and Dunn. Because there were no remaining federal claims, the district court dismissed the lawsuit for lack of subject matter jurisdiction. The plaintiffs timely appealed.

## DISCUSSION

*I.    Section 1983*

The plaintiffs brought Section 1983 claims against CCA, Hernandez,

---

[1] The lawsuit initially named as additional defendants four ICE officials and a Williamson County employee. The claims against these defendants were resolved at earlier stages in the cases and are not part of this appeal.

[2] The lawsuit also initially included other claims not on appeal.

3

No. 15-50331

Dunn, and Williamson County, alleging violations of the plaintiffs' Fifth and Fourteenth Amendment rights. The district court dismissed the claims against CCA and Hernandez for failure to state a claim, and granted summary judgment in favor of Dunn and Williamson County. We examine separately the rulings impacting (1) CCA, Hernandez, and Dunn, and (2) the County.

### A.    *CCA Defendants*

We first review the district court's disposition of the Section 1983 claims against CCA and its employees, Hernandez and Dunn, who collectively we will call the "CCA defendants." CCA and Hernandez successfully moved to dismiss for failure to state a claim, arguing they were not operating the detention center under color of state law and thus are not proper Section 1983 defendants. The district court later granted summary judgment in Dunn's favor on the same grounds.

Dismissal for failure to state a claim is reviewed *de novo. Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012); *see also* FED. R. CIV. P. 12(b)(6). All well-pleaded facts are accepted as true and "view[ed] . . . in the light most favorable to the plaintiff." *Bowlby*, 681 F.3d at 219. To survive a Rule 12(b)(6) motion, a complaint must plead sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Summary judgment in Dunn's favor is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a). Our review is *de novo. Baker v. Am. Airlines, Inc.,* 430 F.3d 750, 753 (5th Cir. 2005).

Section 1983 liability results when a "person" acting "under color of" state law, deprives another of rights "secured by the Constitution" or federal law. 42 U.S.C. § 1983. Federal officials acting under color of federal law are not subject to suit under Section 1983, nor does the statute reach purely

4

private conduct. *District of Columbia v. Carter*, 409 U.S. 418, 424–25 (1973). Where, as here, the defendants are private actors, the challenged "conduct allegedly causing the deprivation of a federal right" must be "fairly attributable to the State" for Section 1983 to apply. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

The Supreme Court has used at least four tests to determine whether private conduct is "fairly attributable to the State . . . ." *See Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005). It is unclear whether these tests "are actually different in operation or [are] simply different ways of characterizing the necessarily fact-bound inquiry . . . ." *See Lugar*, 457 U.S. at 939. The plaintiffs rely on the "nexus" test, under which the state's involvement is such that the private actor's conduct can fairly be treated as that of the state itself.[3] *See Cornish*, 402 F.3d at 550. In essence, the plaintiffs assert that CCA derived its authority to run the detention center from the subcontract with Williamson County, meaning the CCA defendants were acting under color of state law.

The plaintiffs' argument relies in part on a case brought by a federal prisoner against a city jail in which he was temporarily housed. *See Henderson v. Thrower*, 497 F.2d 125 (5th Cir. 1974). There, the district court dismissed the prisoner's Section 1983 claim, concluding that the city jail was not "acting

---

[3] The other analyses include the "public function," "state compulsion," and "joint action" tests. *Cornish*, 402 F.3d at 549–50. The first "examines whether the private entity performs a function which is 'exclusively reserved to the State.'" *Id.* (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 159 (1978)). The plaintiffs, however, argue that the detention center's function as a holding facility for detainees is irrelevant because it derives its power from the state through the subcontract. As for the "state compulsion" test, the plaintiffs do not contend that the state "exert[ed] coercive power" over the CCA defendants or "provide[d] . . . encouragement" to cause the relevant deprivation. *See id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170–71 (1970)). Nor do the plaintiffs assert that the CCA defendants were "jointly engaged . . . in the challenged action" with Williamson County. *See Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

under color of State law, but [was] providing for the . . . safekeeping of the plaintiff in accordance with [a] Federal Contract . . . ." *Id.* at 125. We reversed, finding that control over the facility remained with local officials whose power was "conferred on them by the city, a creature of the State of Alabama." *Id.* at 126. Similarly, the plaintiffs argue here, the fact that the plaintiffs are federal detainees is irrelevant. Whether state action exists depends "on the nature of the defendant" and not the nature of the plaintiff.

The plaintiffs also rely on an unpublished district court opinion. *See Alvarez v. GEO Grp., Inc.,* No. SA-09-CV-0299, 2010 WL 743752 (W.D. Tex. Mar. 1, 2010). A federal prisoner brought a Section 1983 claim against a private contractor operating a county-owned jail. *Id.* at *1. The jail housed state and federal prisoners pursuant to an intergovernmental service agreement between the county and the U.S. Marshals Service. *Id.* The district court, citing *Henderson,* concluded that the contractor was a state actor because there was "no relationship" between the contractor and the federal government. *Id.* at *2, *3 n.21. The district court denied the jail's motion to dismiss. *Id.* at *5. The relevant contract, the district court said, makes clear that the contractor "operates the jail because the County as a state entity . . . authorized it to operate the jail." *Id.* at *2.

The contracts at issue here, the plaintiffs argue, are analogous to those in *Alvarez.* The subcontract between CCA and Williamson County, for example, provides that its terms are governed by Texas law and requires the parties to abide by state and local law, in addition to federal law. The plaintiffs argue these clauses show that the parties "specifically contemplated that CCA would act under color of state law . . . ." Furthermore, the plaintiffs assert, the subcontract provided Williamson County with a "critical role" in the detention center in allowing county employees to access the facility and in requiring CCA to pay the county an administrative fee. The plaintiffs also note that John

No. 15-50331

Foster, a sheriff's deputy responsible for monitoring the detention center for Williamson County, admitted in an affidavit[4] that Williamson County pressured CCA to remove Hernandez after Dunn's conduct was exposed.

Rejecting the plaintiffs' arguments, the magistrate judge was reluctant to rely solely on the subcontract with Williamson County when resolving whether CCA and Hernandez were acting under color of state law. The judge reasoned that the "better determinant" is the "nature of the function" of the detention center. This inquiry essentially is the "public function" test, which focuses on whether a Section 1983 defendant performs a function "exclusively reserved to the State." *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978). The district court agreed with the magistrate judge, concluding that the detention center "was purely an ICE facility, and . . . CCA was charged with carrying out purely ICE functions." The district court later granted summary judgment in Dunn's favor, relying on the same reasoning. We agree with the district court's approach.

As an initial matter, resolving whether an action is "fairly attributable to the State 'begins by identifying the specific conduct of which the plaintiff complains[.]'" *Cornish*, 402 F.3d at 550 (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999)). In *Cornish*, a guard at a private corrections facility that housed juveniles sued under Section 1983 after he was fired. *Id.* at 547–48. Affirming dismissal, we said that the facility's "*role as an employer*" did not constitute state action. *Id.* at 550. This is true even if the facility's role in "providing juvenile correctional services was state action." *Id.* We said that it was immaterial that the facility's guards were subject to state regulations,

---

[4] We cannot consider the affidavit, which is outside the pleadings, in reviewing the district court's Rule 12(b)(6) dismissal of the claims against CCA and Hernandez. *See McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992). Dunn, however, filed a motion for summary judgment, so the affidavit is applicable as to the ruling on that motion.

or that a state contract authorized the facility's operations.  *Id.*

Here, the specific conduct complained of is the CCA defendants' failure to follow ICE's transport policy, which the plaintiffs allege facilitated Dunn's crimes.  Thus, following *Cornish*'s reasoning, the CCA defendants' relevant role on which we must focus is in detaining aliens pending a determination of their immigration status pursuant to ICE specifications.  This is fundamentally a federal function.  Relatedly, we once held that a CCA guard at a detention center housing federal detainees was the equivalent of a federal corrections officer.  *United States v. Thomas*, 240 F.3d 445, 448 (5th Cir. 2001).

Furthermore, even if we focus on the subcontract,[5] its terms support a finding that Williamson County's involvement in running the detention center was minimal.  The subcontract delegated all responsibility for housing detainees pursuant to ICE standards to CCA.  Williamson County is permitted to employ a representative to serve as a "liaison," but it has no involvement in the day-to-day operations of the detention center regardless of whether it pressured CCA to remove Hernandez.  Other provisions of the subcontract merely facilitate an administrative payment between Williamson County and CCA, provide indemnification to Williamson County, and require CCA to notify county officials if there is an emergency at the detention center.  This leaves the fact of the subcontract's existence as the sole connection to the state.  We have said that the "[a]cts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing in public contracts."  *See Cornish*, 402 F.3d at 550.

*Henderson* and *Alvarez*, moreover, are distinguishable on their facts.  The state in both cases exhibited more control over the relevant correctional

---

[5] Again, the plaintiffs' arguments pointing to the subcontract seemingly fall under the "nexus" test.  *See Cornish*, 402 F.3d at 550.

facilities than Williamson County had over the detention center here.  In *Henderson*, the jail was county owned and operated;  it unequivocally derived its existence from the state.  497 F.2d at 126.  No private contractor was involved. *See id. Alvarez* involved a county-owned jail, which was operated by a private contractor and housed state and federal prisoners.  2010 WL 743753, at *1.  The district court said the contract with the Marshals Service to house some federal prisoners did not change the character of the private contractor's relevant function as the operator of the county jail.  *Id.* at *2.

Here, again, the detention center — which houses only federal aliens detained by ICE — is owned and operated by CCA alone, not Williamson County or the state of Texas.  ICE promulgates all policies and procedures by which the detention center must operate through the service agreement and subcontract.  The plaintiffs' case centers on the CCA defendants' violation of one of those policies.  *Henderson* and *Alvarez* are not on point.

Finally, the plaintiffs focus on Williamson County's actions in regard to Dunn. Not only did Williamson County investigate and arrest Dunn after learning of the sexual assaults, the plaintiffs argue, but Dunn was charged with official oppression.  Under Texas law, the crime of official oppression is committed by "[a] public servant acting under color of his office or employment . . . ."  TEX. PENAL CODE ANN. § 39.03(a).  A "[p]ublic servant" is "an officer, employee, or agent of government" or a person "performing a government function under a claim of right although . . . not legally qualified to do so," and "government" includes the state or its political subdivisions or a municipality. *Id.* § 1.07(24), (41).  Again, the plaintiffs assert, this indicates that Williamson County viewed the CCA defendants as state actors.

This argument is also unpersuasive.  We agree with the CCA defendants that whether state or local authorities "believed [Dunn's] conduct fit within the elements of a state crime" has no bearing on the determination of whether the

CCA defendants were acting under color of state law for Section 1983 purposes. The CCA defendants, in housing alien detainees according to ICE specifications, were performing a federal function. *See generally Cornish*, 402 F.3d at 550. Williamson County had almost no involvement in the detention center's day-to-day operations. Thus, the district court did not err in dismissing the plaintiffs' Section 1983 claim against CCA and Hernandez, or in granting summary judgment for Dunn.

### B.     Williamson County

We next examine summary judgment[6] for state actor Williamson County on the plaintiffs' Section 1983 claim. We review a grant of summary judgment *de novo*. *Baker*, 430 F.3d at 753. Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts and evidence are viewed "in the light most favorable to the non-moving party." *Baker*, 430 F.3d at 753.

To summarize our earlier statements of the fundamentals, Section 1983 liability arises when a "person" acting "under color of" state law deprives another of federal rights. 42 U.S.C. § 1983. "[L]ocal government units" like Williamson County are "included among those persons to whom [Section] 1983 applies." *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). To establish liability against a governmental entity, though, a plaintiff must also show the existence of (1) a policy maker; (2) an official policy; and (3) causation, or a violation of rights whose "moving force" is the policy. *Id.* at 690–95.

---

[6] The plaintiffs assert in a one-sentence statement that the district court abused its discretion in granting summary judgment before discovery closed. This argument about discovery is waived, though, as it is merely mentioned and not meaningfully briefed. *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010).

No. 15-50331

An official policy is usually evidenced by "duly promulgated policy statements, ordinances or regulations," but a "custom" may also suffice. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). A custom is "a persistent, widespread practice of [governmental] officials or employees [that] . . . is so common and well-settled as to constitute a custom that fairly represents . . . policy." *Id.* Where the claim is that the policy "*itself* violates federal law, or directs an employee to do so," it is unnecessary to prove a heightened level of culpability on the part of the policymakers. *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997). A showing of "deliberate indifference" to the "known or obvious consequences" of a policy is required where the theory is that a "facially lawful [policy] . . . has led an employee to violate a plaintiff's rights." *Id.* at 406–07.

The plaintiffs here do not challenge the transport policy itself. Instead, they argue that evidence shows Williamson County adopted the transport policy by entering into the service agreement with ICE, knew of the potential consequences to detainees if CCA employees violated the policy, and then failed to monitor the detention center properly to ensure no such violation occurred.

Specifically, the plaintiffs rely on the fact that Williamson County assigned Foster to visit the detention center regularly after learning of a sexual incident in 2007 between a detainee and a guard. In deposition testimony, Foster said he was aware of the transport policy and agreed that failing to follow it could increase the risk of sexual assault on detainees. The plaintiffs also rely on a 2008 report by an independent evaluator showing that the detention center's policies and practices related to sexual abuse and assault prevention were out of compliance with ICE and industry standards. Together, the plaintiffs contend, this evidence raises a fact question as to whether Williamson County "knew of the substantial risk[] of serious harm . . . but maintained a posture of deliberate indifference."

11

Fatally undermining this argument is Foster's uncontradicted testimony detailing his swift action after learning about Dunn.  Foster said that the day he heard that Dunn had sexually assaulted detainees, Foster reported Dunn to the sheriff's office and an investigation immediately ensued.  Foster said that, despite weekly visits to the facility, he had no knowledge of any pattern of sexual misconduct prior to reporting Dunn; if he did, he said he "would have done what [he] could to stop it."  Foster also had never witnessed any violation of the transport policy prior to learning about Dunn's actions.  As the magistrate judge explained, Foster at most "failed to detect . . . that CCA was not complying [with the transport policy] . . . for several months."  Thus, it is undisputed that Williamson County, through Foster, took reasonable measures to abate any "known or obvious consequences" to detainees as soon as it was made aware of the policy violations.  *See Brown*, 520 U.S. at 406–07.  Williamson County did not act with deliberate indifference in monitoring the detention center.

To the extent that the plaintiffs argue Williamson County is liable directly for the CCA defendants' failure to follow the transport policy, we cannot agree.  "[U]nder § 1983, local governments are responsible only for their *own* legal acts."  *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quotation marks omitted).  Contrary to the facts in some of the non-binding cases cited by the plaintiffs, Williamson County did not "delegate[] final policy-making authority" to CCA in regard to protocol for transporting detainees.  In fact, in the subcontract, Williamson County expressly mandated that CCA comply with all provisions of the service agreement, which required adherence to ICE's transport policy.  Williamson County is not directly responsible for CCA's failure to follow policy, and Williamson County did not otherwise act with deliberate indifference in monitoring the detention center.  Summary judgment for Williamson County was proper.

No. 15-50331

## II.    *Federal Tort Claims Act*

The plaintiffs brought claims of negligence and negligent supervision under the Federal Tort Claims Act ("FTCA") against the United States. The district court held that "the government's decisions regarding oversight of its contractors are inherently a discretionary function[,]" and dismissed the claims for lack of jurisdiction pursuant to Rule 12(b)(1). In the alternative, the district court said dismissal under Rule 12(b)(6) was proper because the plaintiffs failed to make a sufficient claim that ICE officials acted with deliberate indifference in monitoring the detention center's operations. Questions of subject matter jurisdiction are reviewed *de novo*. *Wagner v. United States*, 545 F.3d 298, 300 (5th Cir. 2008). Dismissals for failure to state a claim are also reviewed *de novo*. *Bowlby*, 681 F.3d at 219.

Sovereign immunity protects the federal government from being sued without its consent. *Molzof v. United States*, 502 U.S. 301, 304–05 (1992). The FTCA is a "limited waiver" of immunity, allowing the United States to be sued for damages "caused by the negligent or wrongful act or omission of any [Government] employee . . . acting within the scope of his office or employment." *Id.*; *see also* 28 U.S.C. § 1346(b)(1). The discretionary function exception precludes suit, though, where the claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). A two-part test determines the applicability of the discretionary function exception: (1) the challenged action must be the product of "judgment or choice," and (2) the judgment or choice must be "susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 322–25 (1991).

Here, the Government argues that the plaintiffs' FTCA claims — which

stem from ICE officials' knowledge and alleged inaction in regard to transport policy violations — are not cognizable under our precedent. We have held that "[s]upervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function." *Guile v. United States*, 422 F.3d 221, 231 (5th Cir. 2005). The plaintiffs do not address the ramifications of *Guile* in their briefs. Instead, the plaintiffs simply assert that the officials acted with deliberate indifference to their safety, which violated their Fifth Amendment rights. Thus, the plaintiffs contend, the United States is stripped of the protection of the discretionary function exception.

Whether a properly pled constitutional violation allows a plaintiff to circumvent the discretionary function exception is an open question in this circuit. *See Castro v. United States*, 608 F.3d 266 (5th Cir. 2010) (en banc) (pretermitting the issue and affirming judgment below based on alternative grounds); *see also Lopez v. U.S. Immigration and Customs Enf't*, 455 F. App'x 427 (5th Cir. 2011) (avoiding the issue). Because we conclude the plaintiffs did not sufficiently plead that ICE officials acted with deliberate indifference, we need not settle the issue of whether a constitutional violation removes the applicability of the discretionary function exception.

"When a detainee alleges that a federal government official's episodic act or omission violated her [constitutional] . . . right[s] . . . , we must decide whether the official exhibited deliberate indifference . . . ." *See Doe v. Robertson*, 751 F.3d 383, 387 (5th Cir. 2014) (in the context of a *Bivens* action); *see also Lopez*, 455 F. App'x at 434 (examining deliberate indifference in relation to an FTCA claim involving an alleged constitutional violation).

The test for deliberate indifference is subjective: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference" — in other words, the official must "consciously disregard[]" the substantial risk. *See*

*Farmer v. Brennan*, 511 U.S. 825, 837, 839 (1994). The culpability must be more than "mere negligence or even gross negligence." *See Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2014).

Here, the plaintiffs alleged that some ICE officials were "directly involved in prescribing the time, locations, and manner of resident transports," had access to logbooks and other information that would have revealed multiple violations of the transport policy, and knew of some policy violations. These same officials, the plaintiffs contend, understood that violations of ICE's transport policy could result in detainees' sexual assault and knew of some history of sexual assault at the detention center. Thus, the plaintiffs argue that they sufficiently pled that ICE officials acted with deliberate indifference to an obvious risk of sexual assault to detainees during transports.

The Government contends that this court has foreclosed this issue because in a previous appeal we held that these same plaintiffs failed to allege a "viable deliberate indifference claim based on the actions of ICE or its employees." That is not so. In the earlier decision, we decided that qualified immunity shielded two ICE officials originally named as defendants in this lawsuit from the plaintiffs' *Bivens* claims. *Robertson*, 751 F.3d at 385–87. In the second step of a qualified immunity analysis, "the court must decide whether [an official's] . . . conduct was objectively reasonable in light of clearly established law at the time of the incident." *Hernandez*, 380 F.3d at 879. We determined that the plaintiffs adequately pled that the ICE officials "had actual knowledge both of the violations of the [transport policy] . . . and of that [policy's] . . . assault-preventing objective." *Robertson*, 751 F.3d at 389. We dismissed the claims on qualified immunity grounds, though, "because no clearly established law provide[d] that [knowledge of] violations of contractual terms that aim to prevent sexual assault are 'facts from which the inference

15

could be drawn that a substantial risk of serious harm exists.'" *Id.* at 390 (quoting *Farmer*, 511 U.S. at 837). In other words, we held that the officials' actions were objectively reasonable in light of then clearly established law entitling them to qualified immunity. *See id.* There was no need to decide whether, subjectively, the officials' actions constituted deliberate indifference, so we did not reach that question. *Id.* at 393 n.14.

In this appeal, we set aside the objective "clearly established law" requirement, which is traditionally confined to the qualified immunity context. The analytical task before us today is to determine whether the complaint contains sufficient factual information showing that the same ICE officials under scrutiny in *Robertson* acted with deliberate indifference in relation to the transport policy violations and detainees' safety. *See Farmer*, 511 U.S. at 837. We are mindful of our prior conclusion that the plaintiffs sufficiently pled that these officials "had actual knowledge" of transport policy violations and of the transport policy's "assault-preventing objective."[7] *See Robertson*, 751 F.3d at 389. Thus, the specific question is whether that information alone renders the officials' alleged culpability greater than "gross negligence," or whether more is required to make a plausible assertion that the officials knew of a "*substantial* risk of serious harm" and consciously disregarded it. *See Hernandez*, 380 F.3d at 881–82 (quoting *Farmer*, 511 U.S. at 837) (emphasis added). A complaint must include "facts to state a claim to relief that is plausible on its face" to survive a Rule 12(b)(6) motion. *Twombly*, 550 U.S. at 570. We agree with the Government that some of our other conclusions in *Robertson* are relevant to that determination.

---

[7] To the extent that language in the district court's August 7, 2013 order discussing deliberate indifference conflicts with this conclusion, that was error. We may affirm the district court's judgment, however, on any grounds supported by the record. *See Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009).

For example, we discussed that the plaintiffs' complaint did not include "any *concrete facts* betray[ing] a heightened risk of sexual assault during . . . transports . . . ." *Robertson*, 751 F.3d at 391. The plaintiffs do not allege that ICE officials knew of prior incidents of sexual assaults connected with detainee transports, of detainee "fears" of sexual assault during transport, or of Dunn's crimes "(in time to prevent them)." *Id.* at 391–92. There also is no claim that ICE officials knew "of Dunn's dangerous proclivities." *Id.* at 393. The detention center's history of sexual assault, moreover, consists primarily of the 2007 incident between a detainee and guard which was unrelated to detainee transport. *Id.* at 391–92. The guard's employment was terminated. *Id.* at 392.

In short, the plaintiffs failed to plead that ICE officials were aware of facts from which the inference could be drawn that known violations of the transport policy created a "*substantial* risk" that detainees would be sexually assaulted. *See Farmer*, 511 U.S. at 837 (emphasis added).

Our ruling should not be interpreted as setting a standard that requires "a completed attack or confirmed potential victims or aggressors" to make a successful deliberate indifference claim. *See Robertson*, 751 F.3d at 393. Still, mere knowledge of another party's contractual violation is not enough to allege culpability beyond gross negligence in this case. *See id.* We have held that "observ[ing] questionable behavior" and an awareness of lack of "compliance" with the terms of a settlement agreement were not enough to show deliberate indifference. *E.A.F.F. v. Gonzalez*, 600 F. App'x 205, 214 (5th Cir.), *cert. denied*, 135 S. Ct. 2364 (2015). The plaintiffs have not plausibly asserted that ICE officials acted with deliberate indifference. We affirm the district court's dismissal of the plaintiffs' FTCA claims against the United States.

## III.   *State Law Claims*

After ruling on the Section 1983 and FTCA claims, the district court

ordered the plaintiffs to file a third amended complaint asserting any remaining claims against the CCA defendants. The plaintiffs' amended pleading included only state law claims. The district court dismissed the case without prejudice for lack of subject matter jurisdiction because there were no remaining federal claims. Again, we review such a dismissal *de novo*. *See Wagner*, 545 F.3d at 300.

On appeal, the plaintiffs and the CCA defendants agree that dismissal was improper because the plaintiffs pled alienage jurisdiction. A district court has original jurisdiction over a case exceeding $75,000 between "citizens of a State and citizens or subjects of a foreign state, except that [no jurisdiction exists] . . . between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence . . . ." 28 U.S.C. § 1332(a)(2). In the third amended complaint, the plaintiffs alleged they are citizens of foreign states. They also pled that CCA is a Maryland business with its principal place of business in Tennessee, and that Hernandez and Dunn are employees of CCA. The plaintiffs do not, however, allege that they are not lawful permanent residents. Nor do they incorporate information from their previous complaints into their third amended complaint, even though there is information in their previous complaints and other documents already in the record indicating they are not permanent residents.

Some authority supports the view that the plaintiffs' amended pleading is sufficient to show alienage jurisdiction. *See generally Karazanos v. Madison Two Assocs.*, 147 F.3d 624, 627–28 (7th Cir. 1998). We leave it to the district court to consider the validity of this argument.

Thus, we REVERSE dismissal of the remaining claims in plaintiffs' third amended complaint, and REMAND. We otherwise AFFIRM.