# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 9, 2025

Lyle W. Cayce
Clerk

No. 25-30024

Cameron Kemp,

*Plaintiff—Appellant*,

*versus*

Michael Powers; Markay Pierre; Eagles Realty N.W. Louisiana; Full Spectrum Realty; Sheva M. Sims, *Judge*; City of Shreveport; Bill Whiteside, *Deputy Clerk of Court*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:24-CV-1598

_____

Before Southwick, Oldham, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Cameron Kemp appeals the dismissal of his civil rights lawsuit under 42 U.S.C. § 1983, in which he sought to vindicate numerous alleged constitutional violations that occurred during proceedings to evict him and his family from their apartment. We AFFIRM.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-30024

# I

## A

Kemp lived in an apartment leased to his mother and sister. He claims that even though he was not on the lease, he was also a tenant because the landlord accepted rent from him, scheduled inspections with him, and otherwise developed a landlord-tenant relationship with him. He also alleges that after the initial lease expired in September 2021, the lease converted to a month-to-month lease.

On September 11, 2023, the landlord filed an eviction action against Kemp's mother, sister, and all other occupants for non-payment of rent. On September 21, 2023, the Shreveport City Court judge held an eviction hearing at which Kemp was allegedly permitted to represent all tenants because medical issues prevented his mother and sister from attending. Kemp argued that a five-day notice to vacate proffered by the landlord was fraudulent because it was never posted on the apartment door. He also argued that the five-day notice to vacate sent to him by text message was insufficient because Louisiana law requires an unwaivable ten-day notice for month-to-month leases and prohibits notices in the form of a text message. The judge determined that the notice was sufficient because the lease included a waiver of the right to a notice to vacate and ruled in favor of the landlord.

Immediately after the hearing, Kemp went to the clerk's office to file a Notice of Appeal and a Petition for Nullity, but the chief deputy clerk allegedly refused to let him file the papers. Kemp alleges that the judge told the chief deputy clerk that Kemp could not file any pleadings in the eviction action.

The day after the hearing, Kemp's sister called the chief deputy clerk, who allegedly told her that Kemp was not allowed to file papers in the eviction action and that he needed to separately sue the landlord. Kemp claims

2

that the chief deputy clerk falsely told his sister that the judge evicted her because she had failed to appear at the hearing. He also claims that the chief deputy clerk gave his sister unsolicited legal advice.

On September 27, 2023, the landlord allegedly engaged in "self-help eviction practices" and theft by towing Kemp's vehicle from the property without obtaining a writ of possession from a court.

On October 19, 2023, a Notice of Appeal was filed in the eviction action.[1] Kemp alleges that instead of sending the case to the court of appeals, the judge held a hearing on the eviction and his property theft claim on November 16, 2023. Although Kemp appeared at the hearing, the judge dismissed the appeal due to the failure of Kemp's mother and sister to appear. Kemp also alleges that the chief deputy clerk "stopped [him] from filing a Notice of [A]ppeal after the hearing."

B

Proceeding pro se, Kemp sued the judge, the chief deputy clerk, the City of Shreveport, the landlord, the apartment owner, and two property management companies under 42 U.S.C. § 1983. He alleged violations of his rights under the First, Fourth, Fifth, and Fourteenth Amendments, as well as various state law claims, including self-help eviction, perjury, fraud, conversion, theft, negligence, harassment, invasion of privacy, violation of peaceful possession, conspiracy, and subordination of perjury. Kemp claims that the private actors, the judge, and the chief deputy clerk violated his constitutional rights by conspiring to deny him due process and access to fair eviction proceedings. Specifically, he asserts that the judge's actions and rulings in the eviction proceedings and the chief deputy clerk's rejection of his

---

[1] The complaint does not identify who filed the notice.

filings favored the private actors and were contrary to Louisiana law, demonstrating the existence of a conspiracy. Kemp also alleges that the city violated his constitutional rights by failing to train, hire, and discipline the judge despite a pattern of similar misconduct in other cases. The complaint did not explicitly request any relief.

After conducting a preliminary screening under 28 U.S.C. § 1915(e), a magistrate judge recommended that Kemp's *in forma pauperis* complaint be dismissed. Because the complaint did not specify the relief it sought, the magistrate judge initially found that to the extent Kemp was attempting to challenge the outcome of the eviction proceedings, his claims were barred by the *Rooker-Feldman*[2] doctrine. He recommended that all the federal law claims be dismissed with prejudice because (1) the landlord, the apartment owner, and the management companies were private actors not acting under color of law; (2) the judge was entitled to absolute judicial immunity because the challenged conduct against her was judicial in nature; (3) the chief deputy clerk was entitled to absolute immunity and absolute quasi-judicial immunity because the challenged conduct against him arose from tasks performed that were either integral to the judicial process or performed at a judge's direction; and (4) the allegations failed to make out a plausible claim for municipal liability against the city. The magistrate judge also recommended that all the state law claims be dismissed without prejudice because all federal claims are subject to dismissal, and the exercise of supplemental jurisdiction was not warranted.

Kemp objected to the magistrate's recommendation, asserting that he is not asking the court to overturn the eviction judgment "but to address

---

[2] *See D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923).

independent constitutional violations." He also clarified that he sought to recover compensatory damages for financial losses and emotional harm, punitive damages against the private actors for "intentional misconduct," attorney's fees under 42 U.S.C. § 1988, and injunctive relief "[t]o prevent future illegal evictions or actions."

The district court accepted the magistrate judge's recommendation and dismissed all federal claims with prejudice for failure to state a claim and dismissed all state law claims without prejudice after declining to exercise supplemental jurisdiction. This appeal followed.

Kemp makes a variety of arguments on appeal, but he essentially challenges (1) the district court's *Rooker-Feldman* determination, (2) the dismissal of his § 1983 claims, and (3) the district court's refusal to exercise supplemental jurisdiction over his state law claims.

## II

When a district court dismisses an *in forma pauperis* complaint under 28 U.S.C. § 1915(e)(2)(B)(iii) for seeking relief from a defendant immune from such relief, we review the dismissal de novo. *See Perez v. United States*, 481 F. App'x 203, 206 (5th Cir. 2012). We also review de novo the dismissal of a complaint for failure to state a claim under § 1915(e)(2)(B)(ii), applying the same standard for reviewing dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). To avoid dismissal for failure to state a claim, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). We accept the complaint's well-pleaded facts as true, "viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Although we liberally construe a pro se plaintiff's pleadings and hold them to less stringent standards than attorney-drafted pleadings, *Doe v. Charter Commc'ns, L.L.C.*,

131 F.4th 323, 328 (5th Cir. 2025), "[w]e do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions," *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).

## III

Kemp first argues that *Rooker-Feldman* does not apply to his case because he is not seeking to overturn his eviction.

Under the *Rooker-Feldman* doctrine, federal district courts lack subject matter jurisdiction over collateral attacks on state court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). "A state court judgment is attacked for purposes of *Rooker-Feldman* when the federal claims are 'inextricably intertwined' with a challenged state court judgment or where the losing party in a state court action seeks what in substance would be appellate review of the state judgment." *Weaver v. Texas Cap. Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (citation modified). The doctrine does not prohibit a district court from considering an "independent claim," even "one that denies a legal conclusion that a state court has reached." *Exxon Mobil*, 544 U.S. at 293. "If the plaintiff claims damages for injuries caused by the defendants' actions—even those occurring during litigation—rather than injuries arising from a state-court judgment itself, the federal suit is not barred by *Rooker-Feldman*." *Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 673 (5th Cir. 2015) (citing *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 383 (5th Cir. 2013)). We review a district court's jurisdictional dismissal under the *Rooker-Feldman* doctrine de novo. *See Truong*, 717 F.3d at 381.

Here, the magistrate judge's recommendation noted that Kemp's complaint asserted civil rights and tort claims relating to a state court eviction proceeding that became final before the federal action was filed, but that the complaint did not ask for specific relief. After explaining that to the extent it

No. 25-30024

was attacking the eviction judgment, *Rooker-Feldman* barred the suit, the magistrate judge proceeded to the merits of Kemp's federal law claims and recommended they be dismissed. He also recommended that the district court decline jurisdiction over the state law claims. Kemp's objections to the recommendation clarified that he was not challenging the eviction judgment and that he was seeking damages from the defendants for violating his constitutional rights and engaging in other tortious conduct during the eviction proceedings.

Contrary to Kemp's assertions on appeal, the district court did not dismiss his case for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. As the judgment reflects, the district court concurred with the magistrate judge's recommendation, dismissed Kemp's federal claims with prejudice for failure to state a claim, and declined to exercise supplemental jurisdiction over his state law claims. Kemp's *Rooker-Feldman* challenge is without merit.

IV

Kemp next argues that the judge is not immune to suit because her actions were performed in clear absence of jurisdiction and were outside her judicial duties.

Judges generally have absolute immunity from suits for damages. *See Mireles v. Waco*, 502 U.S. 9, 9–10 (1991). Judicial immunity can be overcome only by showing that the actions were not taken in the judge's judicial capacity or that any judicial actions were taken in the complete absence of jurisdiction. *Id.* at 11–12. "Allegations of bad faith or malice are not sufficient to overcome judicial immunity." *Davis v. Tarrant Cnty.*, 565 F.3d 214, 221 (5th Cir. 2009).

Kemp contends that the judge acted in the clear absence of jurisdiction by ruling contrary to established statutory requirements, allowing the

landlord to evict him, and refusing to address the theft of his vehicle, but a judge is not deprived of immunity merely "because the action [s]he took was in error, was done maliciously, or was in excess of h[er] authority." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978). But the judge's actions of which he complains—ignoring him during the appeal hearing, failing to exercise her "contempt powers" to prevent the landlord's eviction and seizure of his property, and enabling the landlord's "self-help eviction tactics"—are judicial in nature. Moreover, Kemp's allegations that the judge "acted pursuant to a conspiracy and committed grave procedural errors [are] not sufficient to avoid absolute judicial immunity." *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991).

V

Kemp also challenges the dismissal of his § 1983 claims against the chief deputy clerk based on absolute immunity, but he does not address the district court's reasoning. By failing to brief any argument regarding the dismissal of his claims against the chief deputy clerk, he has abandoned those claims on appeal. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993) (citation omitted) ("Although we liberally construe the briefs of pro se appellants, we also require that arguments must be briefed to be preserved."); *see also Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987) (failing to identify any error in the district court's analysis "is the same as if he had not appealed that judgment"). Nevertheless, the district court did not err in granting immunity to the chief deputy clerk court because staff "have absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's discretion." *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981).

No. 25-30024

VI

Kemp contends that the private actors were state actors for purposes of his § 1983 claims because they conspired with the judge to execute an "illegal eviction" and used governmental authority to enforce an eviction without following legal procedures.[3]

"Section 1983 liability results when a 'person' acting 'under color of' state law, deprives another of rights 'secured by the Constitution' or federal law." *Doe v. United States*, 831 F.3d 309, 314 (5th Cir. 2016) (quoting 42 U.S.C. § 1983). To bring a § 1983 claim against a private actor, "the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitute state action under color of law." *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 747–48 (5th Cir. 2001) (citing *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924, 928–32 (1982)). "Mere private conduct, no matter how discriminatory or wrongful, is excluded from § 1983's reach." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (modified citation).

The Supreme Court has identified at least four tests to determine whether a private actor is acting under color of state law. *See Lugar*, 457 U.S. at 922; *Cornish*, 402 F.3d at 549 (summarizing the tests). On appeal, Kemp appears to rely on the joint action test and the nexus or state action test.

A

The joint action test examines whether the private actors are "willful participant[s] in joint action with the State or its agents." *Cornish*, 402 F.3d

---

[3] When dismissing the § 1983 claims against the private actors, the district court did not address Kemp's allegations of state action based on a conspiracy with state actors. Nevertheless, we may affirm the district court's judgment on any ground supported by the record. *See Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

at 549–50 (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). "[T]o satisfy the joint action test for a private actor, a plaintiff must plead 'facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents.'" *Hernandez v. Causey*, 124 F.4th 325, 337 (5th Cir. 2024) (citation omitted). "Allegations that are merely conclusory, without reference to specific facts, will not suffice." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004) (citation omitted).

Here, Kemp's complaint fails to allege any facts showing that the private actors conspired with the judge or the chief deputy clerk to deprive him of his constitutional rights. He argues that the judge's rulings in the eviction proceedings were contrary to state eviction law and favorable to the landlord, which suggests that the judge had engaged in a conspiracy with the private actors. "[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis*, 449 U.S. at 28. Kemp's conclusory allegation of a conspiracy between the private and state actors to violate his rights, absent any specific facts regarding the nature of the conspiracy or the participants' roles in it, is insufficient to plead a § 1983 claim under the joint action test. *See Priester*, 354 F.3d at 420.

B

The nexus test asks whether the state has "so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 357–58 (1974). Kemp contends that the private actors were acting under color of state law when they used "state mechanisms" to evict him from the apartment and seize his vehicle. "Private use of state-sanctioned private remedies

or procedures does not rise to the level of state action." *Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 485 (1988); *see, e.g.*, *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 166 (1978) (holding that statutory approval of a private self-help remedy was not sufficient to transform private conduct into state action). Kemp also alleges that the private actors used the judicial system to obtain an eviction that did not follow legal procedures, but "[p]rivate misuse of a state statute alone does not describe conduct that can be attributed to the state." *Earnest v. Lowentritt*, 690 F.2d 1198, 1201 (5th Cir. 1982). "An allegation that private defendants simply misused a valid state statute does not state a cause of action under § 1983." *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988).

Dismissal of the § 1983 claims against the private actors was not erroneous.

## VII

Kemp argues that the city is liable under § 1983 for failing to train, supervise, and discipline its employees because the city was aware of the judge's "documented history of judicial misconduct."

"A person may sue a municipality that violates his or her constitutional rights 'under color of any statute, ordinance, regulation, custom, or usage.'" *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting 42 U.S.C. § 1983); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). To survive dismissal on a § 1983 claim against a municipality for failure to adequately train, supervise, and discipline its employees, a plaintiff "must plead 'that (1) the supervisor either failed to supervise or train the subordinate [employee]; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights[;] and (3) the failure to train or supervise amounts to deliberate indifference.'" *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023) (quoting *Davidson v. City of Stafford*, 848

F.3d 384, 397 (5th Cir. 2017)). A plaintiff can show deliberate indifference by alleging a "pattern of similar constitutional violations by untrained employees." *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018). "[T]o find a municipality liable for a policy based on a pattern, that pattern 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Davidson*, 848 F.3d at 396 (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009)). "A pattern requires similarity, specificity, and sufficiently numerous prior incidents." *Id.*

Here, Kemp has not plausibly alleged a pattern of similar constitutional violations to establish deliberate indifference. Although he alleges that the judge was disciplined by the Louisiana Supreme Court in 2015 for wrongfully holding a prosecutor in contempt and for dismissing 15 criminal cases "without proper authority," general allegations of judicial misconduct in criminal proceedings are not sufficient to establish a pattern in eviction proceedings. Accordingly, the district court did not err in dismissing Kemp's § 1983 claims against the city.

## VIII

Finally, Kemp contends that the district court failed to address the factors set forth in 28 U.S.C. § 1367(c) when it declined to exercise jurisdiction over his state law claims. Because all of Kemp's federal claims were properly dismissed, the court's decision to decline jurisdiction over his state law claims was not an abuse of discretion. *See Brookshire Bros. Holding v. Dayco Prods., Inc.*, 554 F.3d 595, 601–02 (5th Cir. 2009); *cf. Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025) ("With the loss of federal-question jurisdiction, the court loses as well its supplemental jurisdiction

No. 25-30024

over the state claims."). Kemp's assertion that the district court erred by not discussing the § 1367(c) factors lacks merit.

\* \* \*

The judgment of the district court is AFFIRMED.